William Lee HOWLAND,
Plaintiff–Appellant,

v.

William KILQUIST and Gene Truitt,
Defendants–Appellees.

No. 86–1026.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1987.

Decided Nov. 9, 1987.

Steven H. Steinglass, Cleveland–Marshall College of Law LB40, Cleveland, Ohio, for plaintiff-appellant.

Robyn G. Cox, Moser Marsalek, et al., St. Louis, Mo., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

William Lee Howland, proceeding *pro se,* brought suit against the defendants, William Kilquist, Sheriff of Jackson County, Illinois, and Gene Truitt, Chief Jail Administrator of the Jackson County Jail, under 42 U.S.C. § 1983 alleging denial of meaningful access to the courts and reasonable access to other legal materials. Howland also alleged that the defendants transferred him to a maximum security prison and placed him in disciplinary isolation in retaliation for his assertion of his right to meaningful access to the courts. On defendants' motion, the district court granted partial summary judgment with respect to Howland's claimed deprivation of legal materials and legal mail. At the conclusion of trial on the remaining issues, the district court entered judgment for the defendants.

[*] Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

Howland now appeals the district court's entry of both partial summary judgment and final judgment. His appeal also encompasses the district court's denial of appointed counsel. For reasons set forth below, we affirm the judgment of the district court.

## I. *The Facts*

Officers from the Carbondale, Illinois, Police Department arrested Howland on July 25, 1983, and the State charged him with armed robbery. On July 26, Howland was placed in the Jackson County Jail, where he remained until August 15, 1983. On that date, Howland was transferred to Menard Correctional Center for a six-week period. He returned to Jackson County Jail on October 1, 1983, to await his trial on the armed robbery charges. He was convicted of the criminal charges on December 2, 1983.

At the time of his arrest on July 25, 1983, Howland was proceeding *pro se* in several pending civil cases in the federal courts in Illinois. On July 29, 1983, the Jackson County Circuit Court appointed attorney Thomas Mansfield to defend Howland in the armed robbery case. However, apparently because of his dissatisfaction with the performance of counsel, Howland filed a motion to proceed *pro se* in the criminal case. On October 13, 1983, the court granted the motion but ordered Mansfield to remain ready as "standby counsel." Howland was subsequently tried and convicted of the offense charged.

Howland filed this Section 1983 action against the defendants on October 3, 1984, and in December 1984, filed a motion requesting appointment of counsel, which was denied. The district court, however, reserved the right to request counsel for Howland at a later stage, if appropriate. The defendants filed a joint motion for summary judgment on May 9, 1985, to which Howland responded, and then renewed his motion for appointment of counsel. On August 14, 1985, Magistrate Gerald B. Cohn, sitting as district judge by consent of the parties, granted partial summary judgment for the defendants on How-

land's claims that the defendants had unconstitutionally prevented him from receiving legal documents sent through the mail, and had denied him access to legal supplies and material. On August 27, 1985, the district court denied Howland's renewed motion for appointment of counsel. After a three-day bench trial, the district court ruled in favor of the defendants on the remaining issues, entering a final order on December 18, 1985, and a final judgment the following day.

In his appeal from the final judgment, Howland presents three arguments: (1) that the district court erred in granting summary judgment to defendants on the issue of access to legal materials and mail; (2) that the court's findings with respect to the retaliation and disciplinary isolation issues were clearly erroneous; and, (3) that the court erred in denying Howland's motions for appointment of counsel. We discuss each of these arguments in turn.

## II. *Access to the Courts*

Howland claimed that soon after his arrest he instructed his fiance, Ms. Stella Johnson, to forward all litigation-related documents she had received, photocopied sections of the Illinois Revised Statutes and Code of Criminal Procedure, and financial aid records that he considered useful for his preliminary hearing on the armed robbery charge. Howland insisted that when these materials arrived by mail at the Jackson County Jail, they were summarily returned to Ms. Johnson. Moreover, Howland contended that he requested jail officials to provide him with bond paper, carbon paper, ink pens and law books, for the purpose of preparing pretrial motions in the armed robbery case and other pending litigation. He claimed that the jail officials' refusal to provide these materials deprived him of meaningful access to the courts.

The district court found that, while the materials Howland had requested from Ms. Johnson would have been privileged and thus available to him if they had been received from his court-appointed attorney or directly from the court, the contents of

the packages from Ms. Johnson were neither identified as privileged material, nor were they provided by an attorney or the courts. The district court concluded that jail officials were not required to conjecture about the contents of incoming mail, and that legitimate security interests justified the rejection of such unprivileged mail.

With respect to the alleged deprivation of stationery supplies and other legal materials, the district court found that Howland had failed to demonstrate that the deprivation or restriction of such materials in any way impeded his access to the courts in either his criminal case or his pending civil litigation. The court concluded that, absent such a showing, Howland had failed to state a claim for deprivation of his right to meaningful access to the courts, and accordingly granted summary judgment for the defendants.

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When the facts are disputed, the parties must produce proper documentary evidence to support their contentions, and may not rest on mere allegations in the pleadings, *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985). In reviewing a grant of summary judgment, all reasonable inferences from the evidence presented must be drawn in favor of the opposing party. *Matsushita Electric Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985); *International Administrators, Inc. v. Life Insurance Company of North America*, 753 F.2d 1373, 1378 (7th Cir.1985).

Howland challenges the district court's entry of summary judgment on three grounds. He argues first that a factual dispute exists as to whether the defendants actually denied his request for legal materials and returned the materials mailed to Ms. Johnson which precludes summary judgment. We do not agree.

■ The mere existence of a factual dispute will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The factual disputes which Howland raises are not "outcome determinative," for even if we assume, as we must, that the facts as stated by Howland are correct, *i.e.*, that the defendants denied his request for legal materials and returned the materials sent by Ms. Johnson, Howland has still failed to sufficiently state a claim for denial of access to the courts.

■ Howland maintains in his second argument that he was not required to show that his access to the courts was actually impeded by the denial of certain legal materials in order to succeed on the merits of his claim. Howland's understanding of the law is incorrect. This court has consistently found that some showing of detriment caused by the challenged conduct must be made in order to succeed on a claim alleging a deprivation of the right to meaningful access to the courts. *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir.1983); *see Bach v. Coughlin*, 508 F.2d 303, 308 (7th Cir. 1974). Our position on this matter was most recently restated in *Hossman v. Spradlin*, 812 F.2d 1019, 1021–22, n. 2 (7th Cir.1987), where we stated:

> We are ... firmly of the opinion that, in order to proceed to trial and survive a motion for summary judgment, a plaintiff should be required, no matter how minimally, to allege some quantum of detriment caused by the challenged conduct of state officials resulting in the

interruption and/or delay of plaintiff's pending or contemplated litigation.

Howland failed to present any evidence in the district court which would demonstrate that his access to the courts in either his criminal or civil cases had been in any way impeded by the restrictions on, or deprivations of, the stationery supplies, law books and other legal materials which he sought. In his affidavit in opposition to summary judgment, Howland asserts that the defendants' "unreasonable interference" with his attempts to conduct meaningful legal research resulted in an inability to "adequately defend against the armed robbery charge and other pending litigation." Such an assertion is conclusory in nature and, without more, fails to meet that burden. *Hossman v. Spradlin,* 812 F.2d at 1022 ("The mere assertion by appellant ... that legal papers ... and law books were intentionally kept from him fails, without more, to demonstrate a constitutionally significant deprivation of meaningful access to the courts."); *First Commodity Traders v. Heinold Commodities,* 766 F.2d at 1011 (parties may not rest upon conclusory statements in affidavits to support their contentions).

With respect to the criminal proceedings which had been pending against Howland, we find that the trial court's offer of appointment of counsel in those proceedings, and the appointment of standby counsel, satisfied any obligation which the state had to provide Howland with legal assistance. *United States ex rel. George v. Lane,* 718 F.2d 226, 233 (7th Cir.1983). "[N]o consti-

tutional right exists mandating that the prisoner in the alternative be provided access to a law library should he choose to refuse the services of court-appointed counsel." *Id.* at 227.

Howland's third and final argument in opposition to summary judgment challenges the jail's policy of rejecting unprivileged mail and restricting access to legal materials, specifically hardbound legal volumes, on first amendment grounds. Howland maintains that the applicable standard of review for such policies is the strict scrutiny, least-restrictive means, analysis prescribed in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). He argues that the security and safety interests which were advanced in justification of the jail policies were not substantial, and that the defendants were not employing the least restrictive means available to them to insure jail security. Howland concludes, therefore, that the district court erred when it granted defendants' motion for summary judgment.

■ Howland's first amendment arguments were not raised in the district court, and are therefore waived on appeal. *Gianukos v. Loeb Rhoades & Co.,* 822 F.2d 648, 653 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 338 (7th Cir.1987); *Textile Banking Co. v. Rentschler,* 657 F.2d 844, 853 (7th Cir.1981). Even if waiver had not barred our consideration of Howland's first amendment claims, the record clearly demonstrates that such claims were without merit.[1]

---

1. A prison regulation which is alleged to infringe upon an inmate's constitutional rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* —— U.S. ——, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see also, O'Lone v. Estate of Shabazz,* —— U.S. ——, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). "In determining whether an inmate's first amendment rights are being unduly impeded, prison regulations 'cannot be considered in isolation but must be viewed in the light of the alternative means of communication permitted under the regulations ...'" *Gaines v. Lane,* 790 F.2d 1299, 1306–1307 (7th Cir.1986) quoting *Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). The availability of alternative means of exercising the rights restricted in Howland's case is dispositive of his

first amendment claim. The legal materials which Howland sought to obtain from Ms. Johnson could have been provided to him by his attorney or directly from the courts as privileged material. *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). There is no evidence in the record to suggest that Howland ever requested the materials he sought from either of those sources. The record also shows that inmates at the Jackson County Jail were not denied access to hardbound books, as was the case in *Kincaid v. Rusk,* 670 F.2d 737 (7th Cir.1982), but rather that their use of such materials was simply restricted to the unoccupied women's cellblock, which coincidentally was used by the jail for isolation purposes. Such a restriction is not

Based on the foregoing, we find that there exists no genuine issue of material fact, and that defendants were entitled to judgment as a matter of law with respect to Howland's claimed deprivation of access to the court. Accordingly, we affirm the judgment of the district court.

### III. *Retaliatory Transfer*

Howland maintained at trial that his transfer to Menard Correctional Center ("Menard"), a maximum security prison, pending trial was made in retaliation for his requests to receive legal materials. After hearing the evidence, the district court entered judgment for the defendants, finding that Howland's transfer to Menard was routinely made pursuant to a previously established procedure for "parole hold transfer" and not in retaliation for Howland's request for legal materials.

Howland argues on appeal that, in light of the trial testimony, the district court's findings were clearly erroneous. He asserts that the court ignored both the testimony of Booker O'Neil, Howland's parole officer, that Howland had been transferred as a pretrial detainee and not as a parole violator, and that of himself and three fellow inmates regarding a threat allegedly made by defendant Gene Truitt.

Fed.R.Civ.P. 52(a) provides that "findings of fact shall not be set aside unless clearly erroneous." "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it...." *Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

■ "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978); *see also Matzker v. Herr*, 748 F.2d 1142, 1150–51 (7th Cir.1984). If Howland had been able to prove that the defendants transferred him to Menard in retaliation for his attempts to exercise his right to meaningful access to the courts, he would have been entitled to damages. *See Matzker v. Herr*, 748 F.2d at 1151. The district court found that Howland had failed to meet that burden, and we concur.

Mr. O'Neil testified that at the time of his arrest Howland was on parole and under the supervision of the Department of Corrections as a result of a previous felony conviction; that a "parole hold" warrant was thereafter issued for Howland by the Department of Corrections; that under such circumstances, it was "standard procedure" for county correctional facilities to transfer inmates awaiting trial to a state operated correctional institution to alleviate overcrowding in, and financial burdens on, county facilities; that this procedure had been in effect for approximately ten years; that Howland's transfer was effectuated pursuant to a written request by the Jackson County State Attorney's Office dated August 12, 1983; and that on August 13, 1983, the Department of Corrections determined that there was a vacancy at Menard and notified the Jackson County Sheriff's Office on August 13, 1983, that Howland could be transferred. Mr. O'Neil's testimony was corroborated by several witnesses and by written documentation, including the August 12, 1983, letter from the Jackson County State Attorney's Office requesting Howland's transfer.

Howland offered no evidence to rebut that presented by the defendants. In its place, he offered his own testimony and that of three fellow inmates at the Jackson County Jail that on August 15, 1983, the

---

unreasonable given the security and safety interests advanced for its justification. *See, Bell v. Wolfish*, 441 U.S. 520, 551–52, 99 S.Ct. 1861, 1880–81, 60 L.Ed.2d 447 (1979); *Gaines v. Lane*, 790 F.2d at 1304; *Kincaid v. Rusk*, 670 F.2d at 744, n. 12.

defendant Gene Truitt threatened him with transfer to Menard if he continued to request legal materials. Howland summarily concluded that his transfer on August 15 was made at Truitt's request in accordance with his earlier threat, and that such transfer was in retaliation for his exercise of his constitutionally protected right to meaningful access to the courts.

Based on the testimony and exhibits presented at trial, the district court found: (i) that any threat of transfer which Truitt may have made on August 15, 1983, had no "operative effect" because all arrangements for Howland's transfer had been made by persons not parties to this litigation several days before the alleged threat was made and (ii) that Howland's transfer to Menard was routinely made pursuant to a previously established procedure for "parole hold transfer" and not in retaliation for Howland's requests for legal materials.

We find that the district court's findings are not only plausible, but are clearly supported by the evidence. We therefore affirm the judgment of the district court with respect to Howland's claim of retaliatory transfer.

### IV. *Disciplinary Isolation*

Howland maintained throughout the proceedings in the district court that he was placed in isolation as discipline for receiving law books and other legal materials from his attorney. The district court refused to grant summary judgment with respect to Howland's disciplinary isolation claim, finding that a material issue remained for trial as to whether Howland's "isolation" was actually in retaliation for his receipt of legal materials. At the conclusion of the trial, the district court found that the jail had an existing unwritten policy prohibiting the use of hardbound books in the general areas; that the policy was implemented in the interests of maintaining jail security, *i.e.*, to prevent the use of hardbound books as weapons or to conceal contraband; that the jail permitted inmates to use hardbound books in the women's cellblock when it was unoccupied; that the women's cellblock was also used for iso-

lation purposes when necessary; that, while there was no dayroom in the women's cellblock, the conditions therein were otherwise no different from the conditions in the main cellblock; and, that Howland was transferred from the male cellblock to the women's cellblock, not for any disciplinary or retaliatory reasons, but in the exercise of a reasonable security policy.

Howland argues for the first time on appeal that the district court "mischaracterized" the issues presented by his disciplinary isolation claim, and that he was in effect making a constitutional challenge to the jail's policy of restricting the use of hardbound books to the women's cellblock, a place which Howland finds significantly less condusive to his legal research than the men's cellblock. Howland maintains that the defendants' policy of permitting hardbound legal books to be used only in the "disciplinary isolation" cells unreasonably restricted his first amendment rights and denied him meaningful access to the courts.

Howland's attempt to modify his pleadings on appeal comes too late. His first amendment challenge to the hardbound book policy at the Jackson County Jail was not raised in the district court, and is therefore waived on appeal. *Gianukos v. Loeb Rhoades & Co.*, 822 F.2d at 653; *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d at 338; *Textile Banking Co. v. Rentschler*, 657 F.2d at 853. For further discussion, *see* note 1, *infra*.

Any claim which Howland may have had for deprivation of his right to meaningful access to the courts as a result of restrictions placed on his access to law books was addressed by the district court on summary judgment. We have affirmed the district court's ruling with respect to that issue and are not inclined to allow Howland to reraise the same issue under the guise of his disciplinary isolation claim.

### V. *Appointment of Counsel*

Howland filed two motions for appointment of counsel. The first was made two months after the complaint was filed and was denied as untimely, with leave to refile

at a later stage of the proceedings. The second motion, filed June 21, 1985, was denied on August 27, 1985, thirteen days after the district court's entry of partial summary judgment.

Howland argues on appeal that in denying his requests for counsel, the district court failed to analyze and to apply the proper legal standard for appointment of counsel. Howland concludes that the court's failure to identify the facts and legal conclusions which led to its decision was an abuse of discretion, warranting *de novo* review by this court.

■ Howland sought appointment of counsel under 28 U.S.C. § 1915(d), which provides that "[t]he court may request an attorney to represent any person [proceeding *in forma pauperis*] unable to employ counsel." There is no constitutional or statutory right to counsel in a civil case, *Caruth v. Pinkney*, 683 F.2d 1044, 1048 (7th Cir.1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983), and appointment of counsel "rests in the sound discretion of the district court unless denial would result in fundamental unfairness impinging on due process rights." *Heidelberg v. Hammer*, 577 F.2d 429, 531 (7th Cir.1978); *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir.1967). In determining whether to appoint counsel, district courts should consider:

(1) the merits of the indigent litigant's claim (whether there is a colorable claim);

(2) the nature of the factual issues raised in the claim, and whether the indigent is in a position to investigate crucial facts;

(3) the need for legal counsel for cross-examination, particularly when there is a question of credibility;

(4) the indigent litigant's capability to present his own case; and

(5) the complexity of the legal issue.

*Maclin v. Freake*, 650 F.2d 885, 887–89 (7th Cir.1981).

■ In its order of August 25, 1985, the district court identified the five *Maclin* factors, indicated that these factors had been applied in Howland's case, and concluded, without further discussion, that appointment of counsel was not warranted.

We find that, in so ruling, the district court clearly abused its discretion. While the district court applied the proper standard in denying Howland's second request for counsel, it failed to state either orally or in writing its reasons for doing so. "[A] decision made in the absence of a basis is an abuse of discretion." *Darden v. Illinois Bell Telephone Co.*, 797 F.2d 497, 502 (7th Cir.1986). The district court's ruling was also untimely, as it was made after its ruling on summary judgment. *See Brown–Bey v. United States*, 720 F.2d 467, 471 (7th Cir.1983). We find, however, that it would be an exercise in futility and a waste of judicial resources to remand this cause solely for ruling on Howland's request for counsel. The facts and legal issues involved in this case are not complex. The record clearly demonstrates that Howland was familiar with the law, having represented himself on several occasions both in civil matters and in his criminal case; that at the time of his incarceration he was a third-year undergraduate student at Southern Illinois University; and that he was capable of presenting his own case. The record also demonstrates a general lack of merit in Howland's claims. The only step which remains to be completed is the application of the *Maclin* factors to the facts presented. For such a task, "our expertise is as great as the district court's." *Merritt v. Faulkner*, 697 F.2d 761, 766 (7th Cir.1983).

We find that the record, when viewed in its entirety, clearly supports the district court's decision to deny appointment of counsel, and that any error committed by the district court in failing to timely rule upon the motion for appointment of counsel or in failing to state its reasons for denying such a motion is accordingly rendered harmless.

## VI. *Summary*

In summary, we hold (1) that neither the restrictions nor limitations placed on Howland's access to legal materials, including stationery supplies, law books and materi-

als received in the mail, amounts to a deprivation of meaningful access to the courts in the absence of some showing of actual or probable detriment; (2) that the district court's findings with respect to Howland's retaliatory transfer claim were not clearly erroneous, but were supported by the evidence; (3) that Howland's arguments with respect to his disciplinary isolation claim were raised for the first time on appeal and are therefore waived; and, (4) that while the district court may have abused its discretion in the manner in which it denied Howland's motions for appointment of counsel, such error was harmless.

AFFIRMED.