Hall v. Wilson                          CV-94-405-M    03/27/96
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Steven Hall,
        Plaintiff,

        v.                                          Civil No. 94-405-M

Bill Wilson; Albert Herlicka;
Roland Doyon; Michael Sokolow;
Gary Lawrence; Steven Soule;
and Viola Lunderville,
        Defendants.


                                O R D E R


        Steven Hall, an inmate at the New Hampshire State Prison,

brings this civil action against the warden and various employees

of the prison, claiming that a number of his constitutional

rights have been violated under color of state law.  42 U.S.C.

§ 1983.  Defendants move for summary judgment.  Hall objects.


                          **Factual Background**

        On March 15, 1994, Hall was scheduled to be moved from one

cell to another within the prison's Secure Housing Unit.[1]  He was

_____

        [1]  The Secure Housing Unit ("SHU") is reserved for those
prisoners who, for various reasons related to their conduct
within the prison walls, have been categorized as being of the
highest security risk.  Accordingly, they are segregated from the
general prison population, housed in individual cells, and
subjected to the highest levels of control, structure, and
supervision.  Inmates housed in SHU are reviewed at least every
90 days for possible reclassification to a lower security level

told by correctional officers to clean his cell.  When the officers returned approximately 20 minutes later, the floor of the cell was flooded with about an 1/8" of water and waste from the cell toilet.  Hall was directed to clean the cell, gather his personal belongings, and segregate them from property issued to him by the prison.  Correctional officers informed Hall that any property which was not gathered would be considered abandoned and discarded.

Hall admits that he refused to comply with the correctional officers' orders to clean his cell, segregate items of personal property, and present for inspection a pillowcase containing his personal items.  He now claims the pillowcase contained various legal and religious materials.[2]  He argues, however, that his

_____

and return to the general prison population.  Nevertheless, Hall has apparently spent the vast majority of his time at the prison in SHU, noting that he has "only been out of SHU for basically three months since August of 1991."  Hall Deposition at 63 (Exhibit A to defendants' motion for summary judgment).

[2]  Defendants assert that when an inmate is moved from one cell to another in SHU, prison regulations mandate that he separate his personal property from prison property.  He must also specifically identify those materials which are of a legal nature.  Correctional officers are then required to search the prisoner's belongings for weapons and other contraband before he can be moved to his new cell.  Finally, the prisoner is not permitted to carry his belongings to his new cell out of concern that the property bag might be swung at officers as a weapon.  See Affidavit of Michael Sokolow at paras. 5-6 (Exhibit 4E to Hall's objection to summary judgment).

defiance (at least with regard to his refusal to clean the cell) was justified because he had not caused the sewage to flood his cell. Although not material to the issues presently before the court, defendants are, understandably, unwilling to let Hall's claim go unchallenged. They assert that Hall intentionally caused his toilet to back-up and that such a ploy is a common method of "acting out" by disruptive inmates (particularly when they know, as did Hall, that they will shortly be moved out of the soiled cell). Defendants also note that such behavior is entirely consistent with Hall's prior conduct, which has been marked by a series of disruptive incidents. Presumably, it is that history of disruption and defiance that explains Hall's lengthy tenure in SHU and relatively infrequent status as a general population inmate.

According to Hall's deposition testimony, after he refused to clean his cell:

> They opened the cell door, told me to back up against the wall, and Roland Doyon started removing State property from the cell, and I had in my possession [a] pillowcase with my property, and Roland Doyon said that he was going to take that. And I said, "that's my property." And he said, "I don't care, we're taking it." And I said, "no, you're not taking it. It's my legal material."

3

Hall deposition at 65. Hall acknowledges that the pillowcase was State property, Hall deposition at 17, and that he refused to voluntarily turn it over to corrections officers so that it might be searched. Hall deposition at 85.

As a result of the March 15, 1994 incident, Hall was "written-up" for two minor disciplinary infractions. He was given a hearing, found guilty, and sentenced to five days in punitive segregation in SHU. Initially, prison administrators suspended that sentence. It was subsequently executed after Hall was found to have violated other prison rules.[3]

Hall claims that his constitutional rights have been violated in that: (a) he was denied due process in the disciplinary proceedings which resulted in the five-day sentence to punitive segregation; and (b) he was denied access to the

_____

[3] For inmates housed in SHU, punitive segregation involves moving the prisoner to a different tier of cells within SHU. While in punitive segregation a SHU inmate loses one hour of yard time each day, his access to the day room is cut in half (from two hours to one hour), and his access to certain programming and facility resources is limited. Otherwise, the conditions of confinement are substantially similar to those imposed on other inmates in SHU: punitive segregation occurs in a cell of the same size and in the same building as normal maximum security housing; the inmate is still permitted to have writing utensils, legal material, and religious materials; and, typically, punitive segregation lasts no more than 15 days. See Affidavit of Michael Sokolow at paras. 8-9.

courts and deprived of his right to religious freedom when prison officials confiscated the pillowcase which contained legal and religious materials. Prison officials subsequently returned some, but allegedly not all, of the material which Hall had placed in the pillowcase.

## Standard of Review

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992).

5

That burden is discharged only if the cited disagreement relates to a genuine issue of material fact. <u>Wynne v. Tufts University School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992), <u>cert. denied</u>, 507 U.S. 1030 (1993).

## Discussion

I.    <u>Denial of Due Process and Liberty Interests</u>.

Hall's due process claims appear to be based upon his allegations that he was not permitted to call witnesses to assist in his defense at the disciplinary hearing and that the prison failed to act on his appeal following that hearing. He claims that defendants' conduct violated established prison policy, the Supreme Court's holding in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and, ultimately, resulted in an unconstitutional deprivation of liberty without due process.[4]

The question presented to the court is whether Hall had a liberty interest in remaining out of punitive segregation for five days, such that under the Fourteenth Amendment he was entitled to due process of law before that privilege could be

---

[4]    Appended to various pleadings submitted by Hall are excerpts from the NH Department of Corrections Policy and Procedure Directive, which Hall claims to be the source of his right to present witnesses at his disciplinary hearings and to appeal any disciplinary sentence imposed upon him.

revoked. <u>Dominique v. Weld</u>, 73 F.3d 1156, 1160 (1st Cir. 1996).

Based upon the Supreme Court's recent opinion in <u>Sandin v.</u>

<u>Conner</u>, 115 S.Ct. 2293 (1995), the court is compelled to find

that even if Hall's factual allegations are true, he has not been

deprived of a constitutional right. In <u>Sandin</u>, <u>supra</u>, the

Supreme Court held that:

> Following <u>Wolff</u>, we recognize that States may under
> certain circumstances create liberty interests which
> are protected by the Due Process Clause. But these
> interests will be generally limited to freedom from
> restraint which, while not exceeding the sentence in
> such an unexpected manner as to give rise to protection
> by the Due Process Clause of its own force, nonetheless
> imposes atypical and significant hardship on the inmate
> in relation to the ordinary incidents of prison life.

<u>Sandin</u>, 115 S.Ct. at 2300. The Court noted that "[d]iscipline by

prison officials in response to a wide range of misconduct falls

within the expected parameters of the sentence imposed by a court

of law." <u>Id</u>. at 2310. Then, turning to the facts of the case

before it, the Court concluded that the State's actions in

placing Conner in disciplinary segregation in the prison's

Special Holding Unit for 30 days "did not work a major disruption

in his environment," <u>Id</u>. at 2301, and, therefore, "neither the

Hawaii prison regulation in question, nor the Due Process Clause

itself, afforded Conner a protected liberty interest that would

7

entitle him to the procedural protections set forth in <u>Wolff</u>."
<u>Id</u>. at 2302.

Similarly, the discipline imposed upon Hall, who was already confined in the Secure Housing Unit, did not "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id</u>. at 2300. <u>See also</u> <u>Dominique v. Weld</u>, 73 F.3d at 1160-61 (holding that removal of prisoner from work release and return to medium security facility did not impose an "atypical" hardship upon him in relation to the ordinary incidents of prison life). Hall's incarceration in punitive segregation for five days did not affect any state-created liberty interest cognizable under the Due Process Clause. Accordingly, he was not entitled to the procedural protections articulated in <u>Wolff</u>.

II. <u>Denial of Access to the Courts</u>.

Defendants contend that most, if not all, of the legal (and religious) materials which were contained in Hall's pillowcase immediately prior to his transfer to a different cell have been returned to him. Hall claims that much of that material has yet to be returned. Further, he alleges that defendants' refusal to return those materials has prejudiced his ability to litigate

8

certain unidentified claims.  Hall does not specify whether he is referring to ongoing suits (at least one of which was, when Hall initiated this action, pending before another judge of this court) or suits which he anticipates filing at some point in the future.

Defendants argue that Hall has not been denied meaningful access to the courts.  Even assuming that some of his legal materials were removed and never returned, defendants contend that Hall has not suffered any actual harm as a result.  They note that while Hall's pleadings reference two ongoing cases (one in state court and one in this court), he has failed to allege any prejudice to either of those cases stemming from the alleged loss of his legal materials on March 15, 1994.  In his deposition, Hall admitted that he replaced some or all of the allegedly missing legal books.  Hall deposition at 69.  Further, defendants point out that Hall does not claim that the allegedly missing materials were critical or that they could not be replaced by reference to the prison's law library.

Hall has failed to point to any genuine issue of material fact with regard to the issue of prejudice stemming from the alleged loss of his legal materials.  While the loss of those

9

materials (or the delay between their confiscation and subsequent return) may have caused Hall some inconvenience, he has failed to allege that he sustained any injury or harm of constitutional magnitude.[5] "Absent some further showing that the loss of those particular documents deprived [Hall] of the ability to participate meaningfully in the legal process, a court cannot say that a constitutional deprivation has occurred." Sowell v. Vose, 941 F.2d 32, 35 (1st Cir. 1991).

If Hall has actually suffered the loss of some of his personal belongings and/or legal materials, his proper recourse might involve the filing of a claim against the Department of

---

[5] Based upon this court's records, it appears that Hall's federal suit progressed on a normal track until November 12, 1994, when Hall apparently settled his dispute with prison officials. The parties filed a stipulation of dismissal. With regard to his state petition for a writ of habeas corpus, Hall claims that his petition was dismissed because he did not have an adequate opportunity to prepare his case due to the conditions of his confinement. See Order of Merrimack Superior Court Justice Mohl at 1 (September 19, 1994) (Exhibit 2C to Hall's objection to summary judgment). It is, however, clear from that order that Hall filed his petition in state court well after the incidents giving rise to this proceeding. Accordingly, the court cannot find (nor has Hall specifically claimed) that the alleged detention of his legal materials in March of 1994 in any way adversely affected his ability to pursue litigation which he elected to file five months later. To find such a link between these seemingly unrelated events would, based upon the dearth of substantiating evidence in the record, amount to nothing more than strained speculation.

Corrections. The State has a procedure in place to resolve such claims. See N.H. Rev. Stat. Ann. ch. 541-B ("RSA 541-B").

III. Denial of Religious Freedom.

Finally, Hall claims that by failing to return certain materials which he claims were religious in nature, the defendants have deprived him of his constitutionally protected right to freedom of religion. Defendants point out that Hall has not alleged that they knowingly deprived him of religious material. In fact, Hall concedes that during his relatively brief encounter with correctional officers on March 15, 1994, he never informed them that the pillowcase contained any religious materials. Instead, he merely asserted, "that's my property. . . It's my legal material." Hall deposition at 65. Nor does Hall claim that defendants' alleged loss or destruction of his religious materials was purposeful or retaliatory. See, e.g., Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987) ("It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.").

11

Defendants claim that this is, at best, simply a case involving the negligent loss of a prisoner's personal belongings, for which there is an adequate state remedy: a claim against the State pursuant to RSA ch. 541-B. The court agrees. That statute provides a meaningful and adequate avenue by which Hall might seek and, if appropriate, receive compensation for his alleged loss. Simply stated, the claims he has raised in this proceeding are not of constitutional magnitude. Daniels v. Williams, 474 U.S. 327, 332 (1986) ("We think that the actions of prison custodians in . . . mislaying an inmate's property are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law."); Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). See Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part by, Daniels, 474 U.S. 327.

12

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment (document no. 39) is granted.  Plaintiff's motion for discovery of addresses (document no. 35), motion to provide compulsory process (document no. 36), and motion in limine regarding Rule 404(b) evidence (document no. 43) are denied as moot.  The Clerk of the Court is instructed to enter judgment in favor of defendants.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

March 27, 1996

cc:  Steven E. Hall, Pro Se
     Christopher P. Reid, Esq.