## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 23 2020, 9:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Robert Peacher
Pendleton, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Peacher,

*Appellant-Plaintiff,*

v.

Robert Carter, Jr., et al,

*Appellees-Defendants.*

June 23, 2020

Court of Appeals Case No.
19A-PL-2242

Appeal from the Madison Circuit Court

The Honorable David A. Happe, Judge

Trial Court Cause No.
48C04-1710-PL-106

**Altice, Judge.**

# Case Summary

[1] Robert Peacher appears pro se and appeals the trial court's dismissal of his complaint that challenged the constitutionality of various Indiana Department of Correction (DOC) policies concerning inmate mail. Peacher argues that he properly stated a claim for relief in that DOC executives and staff (collectively, "the Defendants") violated his constitutional right to access the courts by preventing him from receiving mail from various legal entities, businesses, and educational institutions.

[2] We affirm.

# Facts and Procedural History

[3] Peacher is presently incarcerated at the Pendleton Correctional Facility (Pendleton) and serving a sentence for multiple convictions, including criminal confinement and attempted rape. Peacher's earliest release date is November 3, 2071.

[4] The DOC has various policies in place regarding incoming and outgoing mail. Other DOC regulations and policies prohibit certain business activities within its facilities. On April 1, 2017, the DOC implemented Executive Directive 17-13 (Directive 17-13) for the purpose of promoting the safety and security of DOC facilities and preventing the introduction of narcotics into its facilities. Directive 17-13 stated that all "[i]ncoming correspondence to offenders must be

in a plain white envelope and the letter/correspondence inside the envelope must be on originally purchased, plain white, lined paper (no photocopies)." *Appellees' Appendix* at 47, 82. These requirements were designed to prevent synthetic narcotics that had been soaked into paper from being circulated in the prisons. It was determined that DOC personnel could more easily detect the presence of drugs on lined paper.

[5] At some point, the DOC rescinded Directive 17-13 and replaced it with other versions that ultimately resulted in Directive 18-54. This Directive, which was implemented on November 1, 2018, excepted legal mail, religious correspondence sent from a religious organization, and educational correspondence that was sent by an educational organization from being confiscated and subsequently distributed through the DOC. Directive 18-54 also allowed for an inmate's receipt of photographs "printed on originally purchased photography paper," and "non-colored black and white computer-printed newspaper articles and drawings/artwork and plain white envelopes that have text printed on them naturally, or electronically." *Id.* at 77.

[6] The DOC's Offender Correspondence Policy (Correspondence Policy) defines "legal correspondence" as "[c]orrespondence mailed directly from or to a court, a judge or an attorney, whether it is the attorney in a criminal or civil action involving the offender, including opposing counsel, and which has been identified as legal mail." *Exhibits* at 49. The Correspondence Policy prohibits printed matter that contains multiple copies, and material containing nudity,

which is defined as "a pictorial depiction where genitalia or female breasts are exposed." *Id.* at 67.

[7] The DOC's Offender Business Activities Policy, No. 02-01-116 (the Business Policy), prohibits inmates from conducting business activity without prior approval from the facility head and deputy commissioner. The Business Policy defines a business activity as "[a]ny venture, enterprise, or other activity by which an offender or others acting on the behalf of an offender engaged in the sale, barter or exchange of goods and/or other services or the solicitation of funds and/or services." *Id.* at 75.

[8] Peacher alleged that prior to his arrest, he owned a business "that published a men's lifestyle magazine." *Appellant's Reply Brief* at 12-13. At some point, Peacher had filed a civil action against a business associate who "had a power of attorney over [the] business" and had mismanaged the company. *Id.* at 13.

[9] Peacher filed a grievance with the DOC on April 3, 2017, claiming that Directive 17-13 violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution because he was prohibited from receiving birthday cards, obituaries, legal materials from non-lawyers, and typed letters from family members with disabilities. Pendleton's mailroom supervisor denied Peacher's informal grievance on April 7, 2017, on the grounds that Directive 17-13 did not prevent communication with his family, and that DOC had enacted the directive for safety and security reasons. Peacher filed additional grievances, claiming that he was improperly denied

access to legal and educational materials from non-lawyers who were assisting him. Those grievances were also denied.

[10] In May and June 2017, the mailroom staff withheld mail addressed to Peacher from Adams State University that contained educational information and transcripts. Peacher filed another grievance, claiming that the materials were improperly withheld because there was no DOC policy that prohibited him from receiving such correspondence. The supervisor denied the grievance on the grounds that while Directive 17-13 prohibited Peacher from directly receiving this type of correspondence, it would be confiscated by DOC officials and subsequently distributed to him "through the Department." *Appellees' Appendix* at 57.

[11] On October 17, 2017, Peacher filed a complaint against the Defendants, claiming they violated his First and Fourteenth Amendment rights under the United States Constitution because Executive Directive 17-13 denied him access to the courts by confiscating from him and preventing his receipt of educational materials.

[12] Peacher's complaint demanded that: 1) all of the confiscated mail be returned to him; 2) he be awarded $1,000 for the destruction of physical evidence; 3) he be awarded $5,000 per defendant in punitive damages; 4) the court issue an injunction providing him full access to legal research and evidence gathered from paralegals, investigators, and others in the legal field; and 5) the trial court order the Defendants to pay all of his legal costs and filing fees.

[13] Nearly one year later, on October 18, 2018, Peacher filed a motion for a preliminary injunction, claiming that the Defendants were wrongfully withholding legal work product, documents, and evidence in "pending legal cases." *Appellees' Appendix* at 60. In response, the Defendants maintained that Peacher failed to identify any specific harm that he might have suffered, and that DOC had forwarded the confiscated mail to other individuals "at Peacher's request." *Id.* at 74.

[14] While the litigation was pending, an envelope arrived for Peacher from TPC Commedia, LLC, (TPC) that had been stamped "legal papers." *Appellees' Appendix* at 90; *Exhibit* 84. Pendleton's mailroom employee opened the envelope because it had not been sent from an attorney. Inside were two magazines, both of which DOC determined contained nudity in violation of the Correspondence Policy. The magazines were also not permitted because they had not been sent by the publisher. Moreover, DOC staff noticed that even though the return address listed TPC as a Nevada company, the envelopes were postmarked in Indiana. Peacher filed an informal grievance with the mailroom supervisor, claiming that the magazines did not contain nudity and that he had seen other copies of that same magazine in the facility. Although this mail had been initially confiscated by mailroom personnel, DOC forwarded the materials to Peacher's attorney pursuant to Peacher's request.

[15] In December 2018, Pendleton's mailroom personnel confiscated incoming correspondence addressed to Peacher that contained suspected evidence of

unauthorized business activity. Included was a magazine vendor application from the TNG Company, a publisher/distributor purchasing agreement, and a new/transition title information sheet. Peacher's grievance pertaining to the confiscation of these mailings was also denied because the materials violated the Business Policy.

[16] Pendleton's mailroom staff also confiscated mail in November and December 2018 that Peacher sent to the Madison County Courts and an Indianapolis law firm. Both envelopes had been returned to Pendleton by the United States Postal Service (USPS) and marked "return to sender." *Exhibits* at 100-07. In accordance with Directive 18-34, Peacher was afforded the opportunity to provide new addresses and envelopes if he wanted to resend the letters. Peacher filed grievances complaining about the DOC's "constant revenge, retaliation, and deliberate interference in [his] court cases." *Id.* at 103. The DOC also denied those grievances.

[17] Prior to the hearing on the preliminary injunction, Peacher amended his complaint, claiming that the Directives and regulations unlawfully restricted and censored his mail. The substance of Peacher's claims remained the same, in that he was challenging various DOC policies that allegedly violated his First and Fourteenth Amendment right of access to the courts and his right to educational materials.

[18] At the hearing on the preliminary injunction that commenced on January 25, 2019, the Defendants offered into evidence copies of the correspondence that

Pendleton's mailroom staff had confiscated.[1]  Following that hearing, the Defendants filed a motion to dismiss on February 20, 2019, claiming that Peacher's complaint should be dismissed in accordance with Indiana Trial Rules 12(B)(1) and 12(B)(6) for lack of subject matter jurisdiction and for failing to state a claim upon which relief could be granted.  In support of their motion, the Defendants referenced the mailings described above and other exhibits that Peacher had attached to the motion for preliminary injunction and their response to that motion.

[19]  The Defendants argued that Directive 18-54—which superseded Directive 17-13—exempts legal mail from confiscation and permits an offender to receive educational correspondence, once approved by the prison warden.  The Defendants further asserted that they did nothing to affect or impede Peacher's access to the courts.  Therefore, the Defendants claimed that Peacher's complaint failed to state a claim upon which relief could be granted.  Finally, the Defendants asserted that Peacher's claim should be dismissed for lack of subject matter jurisdiction because Peacher failed to assert a direct violation of his constitutional rights and the Directives at issue served legitimate objectives including the deterrence of crime and institutional safety.

---

[1] Peacher also attached copies of that correspondence to his motion for preliminary injunction.

The trial court denied Peacher's motion for a preliminary injunction on March 8, 2019, concluding that

> 3. The examples of said mail admitted at hearing included photographs of women wearing lingerie, swimsuits, and/or partially translucent shirts. Other examples cited by [the Defendants] included 'Bull' magazine, which evidently contains similar photographs. Among other things, [Peacher] claims he needs access to replacement copies of the May 2016 edition of this magazine for 'court reasons.'

> 4. [Peacher] claims he is entitled to relief from DOC policies governing prisoners' receipt of mail.

> 5. The Court accepts Defendants' position that the Court lacks jurisdiction to externally review and override internal administrative policies of the IDOC, as said policies apply in this case. The Court can find no evidence that [Peacher's] access to the Courts or to legal advice has been impaired by denying him access to images defined as nudity by the policy. For reasons of security, behavioral management, punishment, and rehabilitation, IDOC must have the ability to restrict freedoms for inmates that un-incarcerated persons could enjoy.

> 6. The Court also finds that [IDOC] has adopted a reasonably clear policy defining what materials are considered nudity, and are therefore banned within the facility.

> 7. [Peacher] has failed to meet his burden to demonstrate that he will suffer irreparable harm during the pendency of this action, that his remedies at law are insufficient, or that he has a reasonable likelihood of success on the merits.

*Appellees' Appendix* at 171.

On May 10, 2019, the trial court conducted a hearing on the Defendants' motion to dismiss that was subsequently granted on August 26, 2019. The trial court determined, among other things, that

> 2. The essence of [Peacher's] claim is that he has been denied access to certain mailed items, consisting of magazines which the Court has previously ruled fit the [DOC's] definition of nudity, and are therefore banned materials within his facility.

> 3. As established at hearing, the materials [Peacher] wants access to are not legal materials. To the extent that they affect any legal matter, [Peacher] was given an opportunity to have these materials sent to a legal representative outside the DOC.

> 4. [Peacher] has not established that the Defendants' actions have impinged on his ability to litigate any action, nor infringed on his access to the courts.

> 5. There are legitimate penological purposes furthered by restricting access to mail as happened in this case. It provides at least some measure of control over trafficking illegal substances into facilities. For reasons of security, behavioral management, punishment and rehabilitation, [DOC] must have the ability to restrict freedoms for inmates that an un-incarcerated person could enjoy.

*Id.* at 35-36. The trial court further concluded that it lacked subject matter jurisdiction over internal DOC policies.[2] Notwithstanding the jurisdictional ruling, the trial court dismissed Peacher's action with prejudice. Peacher now appeals.

## Discussion and Decision

### *I. Standard of Review*

[22] T.R. 12(B)(6) allows a motion to dismiss based on failure to state a claim upon which relief can be granted. *Robertson v. State,* 141 N.E.3d 1224, 1227 (Ind. 2020). When ruling on a motion to dismiss, the trial court must "view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the non-movant's favor." *Id.* A motion to dismiss under T.R. 12(B)(6) tests the legal sufficiency of a complaint: "whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Budner v. Incorporated Town of North Judson*, 113 N.E.3d 225, 226 (Ind. Ct. App. 2018).

[23] This court reviews a trial court's ruling on a motion to dismiss for failure to state a claim *de novo*. *Id.* We may "affirm the grant of a motion to dismiss if it

---

[2] The State concedes, and we agree, that the trial court erroneously determined that it lacked subject matter jurisdiction over Peacher's claims. State courts do have jurisdiction to address federal constitutional challenges to DOC policies brought by inmates. *Kimrey v. Donahue*, 861 N.E.2d 379, 382 (Ind. Ct. App. 2007), *trans. denied.* Nonetheless, the error is harmless because the trial court proceeded to consider the issues presented in the motion to dismiss.

is sustainable on any theory." *Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018). When ruling on a motion to dismiss, the trial court may also consider "materials of which a trial court may take judicial notice." *Moss v. Horizon Bank, N.A.,* 120 N.E.3d 560, 563 (Ind. Ct. App. 2019). The trial court may take judicial notice of its own orders in the same case and it may judicially notice pleadings and exhibits attached thereto in the very case that is before the court. *Riviera Plaza Investments, LLC v. Wells Fargo Bank, N.A.,* 10 N.E.3d 541, 546 (Ind. Ct. App. 2014).

## II. Peacher's Claims

[24]  Peacher contends that the trial court erred in granting the Defendants' motion to dismiss because he properly asserted a claim that the Defendants interfered with his constitutional right of access to the courts. Peacher claims that the Defendants impeded his access to the courts when it withheld "relevant and material legal mail, documents and evidence" from him. *Appellant's Brief* at 15.[3]

[25]  The United States Supreme Court has declared that while prisoners have constitutional rights, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta,* 539 U.S. 126,

---

[3] Although Peacher states in his appellate brief that "his company's magazine was already being sold around the country and in the facility," and that his "magazine does not contain nudity," he makes no argument regarding Pendleton's alleged improper confiscation of these materials. *Appellant's Brief* at 15. Peacher also does not argue on appeal that his constitutional right to receive mail from an educational institution was violated. Thus, Peacher has waived these issues for purposes of appeal. *See Tavake v. State,* 131 N.E.3d 696, 708 n.3 (Ind. Ct. App. 2019) (holding that the failure to develop a cogent argument results in waiver of the issue on appeal) (citing Indiana Appellate Rule 46(A)(8)(a)), *trans. denied.*

131 (2003); *see also Kimrey v. Donahue*, 861 NE.2d 379, 383 (Ind. Ct. App. 2007), *trans. denied*. Hence, many restrictions on a prisoner's First Amendment rights have been upheld. *See, e.g., Beard v. Banks*, 548 U.S. 521, 528-33 (2006) (upholding a regulation prohibiting prisoners with a high security level from accessing newspapers, magazines, and photographs); *Overton*, 539 U.S. at 131-36 (upholding a regulation prohibiting inmates with two substance-abuse violations from having visitation); *Shaw v. Murphy*, 532 U.S. 223, 231-32 (2001) (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners); *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (upholding a regulation that permitted a prison warden to reject publications found "to be detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity").

[26] An incarcerated offender's right to gain access to the courts is limited. More specifically, prison officials should provide prisoners with the tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Impairment of any other litigating capacity "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

[27] A prisoner asserting a denial of access to the courts claim must also show an "'actual injury' in the form of interference with a 'nonfrivolous' legal claim." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Put another way, the right of access to the courts is tied to and limited by a "prisoner's right to vindication

for a separate and distinct right to seek judicial relief for some wrong." *Id.* In short, the deprivation of or restriction on legal materials is insufficient to support an access-to-courts claim absent evidence of harm. *See In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (holding that an inmate had failed to state an access-to-courts claim because he did not inform the court of the underlying legal claims frustrated by the delay that could have established a nonfrivolous, arguable claim); *see also Howland v. Kilquis,* 833 F.2d 639, 643 (7th Cir. 1987) (observing that a prisoner's conclusory assertions that the defendants' "unreasonable interference" with his attempts to conduct meaningful legal research resulted in an inability to adequately defend against an armed robbery charge and other pending litigation failed to state an access-to-courts claim).

[28] Here, Peacher alleged in his complaint that the Defendants' enactment of the Directives violated his rights by "denying him access to affidavits, legal research, evidence, etc. from witnesses, paralegals, investigators, law students and others in the legal field." *Appellees' Appendix* at 139. Hence, Peacher asserted that the Defendants' "policy of restricting and censoring [his] mail violated [his] right of access to the courts" . . . and "directly interfere[ed] in [his] cases. . . ." *Id.* at 140, 142.

Peacher's complaint does not assert that the Defendants interfered with his ability to collaterally challenge his sentence or the conditions of his confinement. Rather, Peacher is claiming that the Defendants allegedly interfered with his pursuit of unrelated litigation that he had commenced against his former attorney and business associate. Moreover, other than

advancing conclusory statements about the Defendants' alleged denial of his access to various legal materials and assistance, Peacher did not allege how he was harmed by the Defendants' alleged wrongdoings. In short, Peacher failed to allege any actual injury that resulted from the Defendants' confiscation of his mail.

[29] Additionally, none of the confiscated mailings show that Peacher's right of access to the courts was violated. Although some of the mail was strictly prohibited by DOC policy and did not qualify as legal mail under the Directives, Peacher was afforded the opportunity to send them to his attorney. As for the correspondence that was returned to the facility by the USPS, the Defendants played no role in the return of that material, and DOC gave Peacher the option to resend them.

[30] In sum, there is no showing that Defendants interfered with Peacher's right of access to the courts, and Peacher's complaint fails to state an access-to-courts claim upon which relief can be granted. For the reasons discussed above, we conclude that the trial court properly granted the Defendants' motion to dismiss Peacher's complaint.

[31] Judgment affirmed.

Bailey, J. and Crone, J., concur.