909 F.2d 1486
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roger HEATH, Petitioner-Appellant,
v.
Michael NEAL and Neil F. Hartigan, Respondents-Appellees.
 No. 89-1026.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 11, 1990.*
Decided July 30, 1990.
 
 ORDER
 Pro se appellant Roger Heath appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. Heath also challenges the district court's denial of his motion for appointment of counsel. We affirm.
 Heath's petition to the district court and his appellate brief claim that his trial counsel was ineffective in his treatment of Heath's entrapment defense, and that the state knowingly used perjured testimony by Heath's co-defendant. The district court's analysis of these two issues was accurate, and we affirm on the basis of the reasoning given in that order. See Appendix.
 Heath's brief on appeal also argues that the general verdict returned by the state trial court jury could not support his conviction, and that he was denied an opportunity to cross-examine a government witness. Neither of these issues was presented to the district court, and therefore they are waived. United States v. Lewis, 896 F.2d 246, 249 (7th Cir.1990).
 Finally, Heath challenges the district court's failure to appoint counsel for him. Neither party has provided a copy of the district court's order denying Heath's motion for appointment of counsel, and there is no evidence of such an order in the district court's docket sheet. Both parties treat the motion as if it were explicitly denied, which is an inaccurate portrayal of the proceedings below. It is true that the district court implicitly denied Heath's motion by failing to rule on it and then denying his petition on the merits, and thus we will view this as a de facto denial of appointed counsel. Our usual review of rulings on motions for appointment of counsel is for an abuse of discretion. McNeil v. Lowney, 831 F.2d 1368, 1371 (7th Cir.1987), cert. denied, 485 U.S. 965 (1988). Where the district court has failed to state its reasons for denying a motion for appointment of counsel, we have found an abuse of discretion. Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir.1987). We think the same is true of a complete failure to address the motion prior to a decision on the merits in defendants' favor. We therefore review this case in the same posture as we would an inadequately explained explicit denial of counsel. Thus, we make a de novo determination on whether counsel should have been appointed, id, applying the factors of Maclin v. Freake, 650 F.2d 885 (7th Cir.1981).[1]
 We first look to the merits of Heath's claim and his chances of success at the time he filed his motion for counsel. Maclin, 650 F.2d at 887. The two issues he raised were that his state trial counsel had been ineffective and that the state had used perjured testimony. Heath's claims were not factually supportable, let alone legally supportable. Moreover, there was no hearing held in the district court and thus no need for the skill of cross-examination, and the legal and factual issues raised by Heath's petition were not complex. See Childs v. Duckworth, 705 F.2d 915, 922-23 (7th Cir.1983). Finally, Heath was capable of presenting his own case, id., as evidenced by his petition and accompanying memorandum, and his Memorandum in Response to Respondents' Answer, which was filed with his motion for appointment of counsel. These pleadings presented the relevant facts and cited to relevant precedent, and showed no lack of understanding on Heath's part of the legal process and his claims. Appointment of counsel was not called for under the Maclin factors, and therefore any error committed by the district court in failing to rule upon this motion was harmless. Howland, 833 F.2d at 646.
 The district court's denial of Heath's petition for a writ of habeas corpus is
 AFFIRMED.
 Appendix
 UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS
 UNITED STATES ex rel. ROGER HEATH, Petitioner,
 vs.
 MICHAEL NEAL, et al., Respondents.
 No. 87-2513
 Dec. 8, 1988
 ORDER
 BAKER, Chief Judge.
 
 
 1
 Roger Heath, a prisoner at the Danville Correctional Center, was convicted on multiple counts of possession and delivery of controlled substances. Heath has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 on the grounds that: (1) his conviction violated principles of due process because his attorney provided ineffective assistance of counsel during the trial court proceedings, and (2) the failure of the prosecution to correct testimony that the prosecution knew to be perjured denied the petitioner due process of law. The petitioner has exhausted his state remedies. The court's jurisdiction is premised on 28 U.S.C. Sec. 1331 (Supp.1988). The petition is denied for the reasons stated in this order.
 
 1. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 2
 The Sixth Amendment guarantees an accused the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). An accused is afforded effective assistance of counsel to ensure his fundamental right to a fair trial. See Gideon v. Wainwright, 372 U.S. 335 (1963). In order to require a reversal of his conviction, a convicted defendant must demonstrate that: (1) his counsel's performance was deficient and (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A counsel's performance is considered deficient when counsel makes "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," while the prejudice requirement is met by demonstrating that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 
 
 3
 Heath alleges that his counsel's failure to present an entrapment defense adequately, when all available evidence indicated that Heath had been entrapped, demonstrates ineffective assistance of counsel. Specifically, Heath claims that his attorney, Carlton Kagawa, deprived him of the value of the entrapment defense by also raising involuntary intoxication as a defense at the trial. (Docket # 3, pp. 6-8).
 
 
 4
 Some Illinois courts have held that a defendant may not "deny the commission of an offense and at the same time claim entrapment" See People v. Arriaga, 92 Ill.App.3d 951, 954 (2d Dist.1981); People v. Bradley, 73 Ill.App.3d 347, 349 (3d Dist.1979); But see, People v. Jensen, 37 Ill.App.3d 1010, 1014 (1st Dist. 1st Div.1976) (The plaintiff was allowed to raise an entrapment defense where his denial was not based on a factual dispute with the state, but rather on a legal disagreement as to the meaning of the word "highway."); People v. Jones, 73 Ill.App.2d 55, 60 (1st Dist., 3d Div.1966) (Although the plaintiff denied knowing the contents of the box, the plaintiff was entitled to a jury instruction on entrapment since she admitted delivering a box containing illegal drugs.).
 
 
 5
 The trial judge refused to give an entrapment instruction because, although sufficient evidence existed for an instruction on entrapment, Heath's failure to admit to the commission of the crime of the offenses rendered the entrapment defense unavailable. Subsequently, Kagawa and the prosecutor agreed to submit a compromise instruction regarding entrapment. Heath's ineffective assistance argument is based on the claim that under Illinois law the defense of entrapment is unavailable to a defendant who denies committing the offense and Kagawa failed to take that into consideration and confused entrapment with voluntary intoxication.
 
 
 6
 The entrapment defense, however, is not of "constitutional dimension." See Mathews v. United States, 108 S.Ct. 883, 888 (1988); United States v. Russell, 411 U.S. 423 (1973). Even if the trial judge should have given a straight instruction on entrapment rather than the compromise instruction that he actually gave, that would constitute an error in state procedure only. Procedural errors committed in the course of a state criminal trial do not constitute grounds for a federal habeas corpus, Bell v. Duckworth, No. 87-2591 (7th Cir., Nov. 8, 1988) 861 F2d 169, citing Smith v. Phillips, 455 U.S. 209, 221 (1982).
 
 
 7
 Moreover, the court concludes that Kagawa did not render ineffective assistance at trial. A review of the trial transcript indicates that Kagawa intended to raise an entrapment defense. Kagawa raised issues of entrapment during his opening argument, framed questions to the witnesses that would permit the jury to draw inferences of entrapment, argued vigorously for jury instructions on entrapment during the instruction conference, and constructed his entire closing argument around an entrapment theory. During the instruction conference, the trial court judge conceded that Kagawa had presented sufficient evidence to warrant an instruction on entrapment. Transcript of Proceedings in People v. Heath, pp. 253-255 (April 14, 1983) (hereafter "Tr").
 
 
 8
 The confusion regarding the voluntary intoxication defense arose as part of Kagawa's attempt to prove entrapment. The record indicates that Heath was an alcoholic. Kagawa attempted to strengthen the entrapment claim by demonstrating inducement that undercover agents met with Heath to discuss drug deals in bars knowing that Heath would drink excessively, thus reducing his will to resist the commission of a crime. Several witnesses testified regarding Heath's inability to drink responsibly, and the trial judge and prosecutor interpreted such testimony as the framework for a voluntary intoxication defense. Their impressions were strengthened after Heath testified that he did not recall committing several of the drug transactions because he was intoxicated.
 
 
 9
 During the instruction conference, Kagawa argued vigorously for a jury instruction regarding entrapment. The trial judge refused to give an entrapment instruction because, although sufficient evidence existed for an instruction on entrapment, Heath's failure to admit to the commission of the offenses rendered the entrapment defense unavailable under Illinois law. After significant discussion regarding the admission of an entrapment instruction, Kagawa and the prosecutor agreed to submit a compromise instruction regarding entrapment.
 
 
 10
 Nothing in the record supports the contention that Kagawa committed errors so serious that he was ineffective within Sixth Amendment meaning. To the contrary, Kagawa was confronted with a factual situation that made defense of Heath most difficult. Kagawa made the best of a bad situation and tried to use Heath's alcoholism to show that the police procured Heath's criminal conduct and induced him to do what he would not have done if he was sober.
 
 B. Prejudice
 
 11
 Even if Kagawa provided deficient representation, Heath must still demonstrate that he was prejudiced by the compromise instruction. The compromise jury instruction on entrapment read as follows:
 
 
 12
 It is a defense to the charge made against the defendant that he was entrapped; that is, that for the purpose of obtaining evidence against the defendant, he was incited or induced by an agent of a public officer to commit an offense.
 
 
 13
 However, the defendant was not entrapped if an agent of a public officer merely afforded to the defendant the opportunity or facility for committing an offense in furtherance of a criminal purpose which the defendant originated.
 
 
 14
 A defendant is precluded from relying on entrapment as a defense if he denies any of the facts constituting the offense charged.
 
 
 15
 A person commits the offense of delivery of a controlled substance when he knowingly delivers a controlled substance.
 
 
 16
 A person commits the offense of possession of a controlled substance when he knowingly possesses a controlled substance.
 
 
 17
 A person commits the offense of possession with intent to deliver a controlled substance when he knowingly possesses with the intent to deliver a controlled substance.
 
 
 18
 To sustain the charge of delivery of a controlled substance ..., the state must prove the following propositions:
 
 
 19
 First, that the defendant knowingly delivered ... a controlled substance; and
 
 
 20
 Second, that the defendant was not entrapped.
 
 
 21
 However, the state is not required to prove the defendant was not entrapped if the defendant has denied deliverying [a controlled substance].
 
 
 22
 If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty of that offense.
 
 
 23
 If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty of that offense.[1]
 
 
 24
 Tr. at 306-308. The compromise instruction on entrapment is quite similar to the Illinois model jury instruction on entrapment. See, Illinois Pattern Jury Instructions--Criminal 2d, ch. 24, Instr. 25.04 (1981). One variation between the compromise instruction and the model instruction is that the compromise instruction further informs the jury that "a defendant is precluded from relying on entrapment as a defense if he denies any of the facts constituting the offense charged." Further, the compromise instruction instructs the jurors to disregard the entrapment defense if the jury finds that Heath denied committing an alleged offense. Heath claims that the additional language rendered the entrapment instruction useless because the state was relieved of its burden to disprove entrapment. Heath argues that because the state presented no evidence to contradict the entrapment defense, the jury, in its finding that Heath had not been entrapped, must have relied upon the statement that the state was not required to disprove entrapment if Heath had denied committing the offenses.
 
 
 25
 The court concludes that the state produced adequate evidence to allow a rational finder of fact to conclude beyond a reasonable doubt that Heath initiated the sale of controlled substances and that public officers merely afforded Heath the opportunity to commit the offenses. Although some contradictory evidence exists, the testimony provided by several state witnesses indicated that Heath was significantly involved in the sales of controlled substances and that Heath initiated such sales on several occasions.
 
 PERJURY
 
 26
 Matthew Walter, a co-defendant, was one of the state's key witnesses in the case against Heath. Walter testified extensively regarding Heath's involvement in the drug transactions and indicated that Heath had initiated several of the drug sales. There is no dispute that Walter testified at Heath's trial pursuant to a plea agreement between Walter and the State's Attorneys. Walter agreed to plead guilty to one count of delivery of cocaine, and to testify against his co-defendants. In return, the state agreed to dismiss all other counts against Walter and to make no recommendation regarding Walter's sentencing. Heath alleges that Walter and the prosecutor distorted the nature of the plea agreement during the trial proceedings in order to mislead the jurors about the extent of the agreement.
 
 
 27
 It is generally recognized that "[k]nowing use by the state of perjured testimony deprives the defendant of due process, violating the Fourteenth Amendment and requiring a new trial. This is so whether the prosecutor makes the false statements himself or allows the false statements of a witness to go uncorrected." DuBose v. Lefevre, 619 F.2d 973, 978 (2d Cir.1980). A defendant is deprived of due process even when the "false testimony goes only to the credibility of a witness." Napue v. Illinois, 360 U.S. 264, 269 (1959). If a prosecutor allows the presentation of known false evidence, a new trial will be required when there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. Giglio v. United States, 405 U.S. 150, 154 (1972). In order to determine whether Heath's conviction should be overturned, the court must determine whether the prosecutor permitted the presentation of false evidence, and if so, whether such evidence likely affected the judgment of the jury.
 
 
 28
 During the prosecution's direct examination of Walter, Walter indicated that he was "testifying today as a result of a deal negotiated between the people and [Walter]." Tr. at 133. The prosecutor then indicated that Walter pled guilty to the charge of delivery of cocaine, but that the state had made no promises to Walter regarding sentencing on that charge. Tr. at 133. On cross-examination, Kagawa reestablished that Walter was testifying in return for the state's promise to dismiss certain charges against Walter. Tr. at 163. Kagawa established that the state had agreed to drop the most serious of the charges pending against Walter, those that required mandatory penitentiary time, in order to secure Walter's testimony. Kagawa emphasized that the agreement forbade the state to make a recommendation regarding the charge to which Walter had pled guilty, and that the agreement allowed Walter's attorney to argue for a sentence of probation. Finally, Kagawa elicited testimony from Walter indicating that law enforcement officials would testify at Walter's sentencing that they had no objection to Walter being placed on probation. Tr. at 165. On re-direct examination, the prosecution asked Walter whether the agreement between himself and the state had any affect upon Walter's testimony. Walter responded that the agreement had no effect upon his testimony. Tr. at 166.
 
 
 29
 While the court recognizes that partial explanations can often be deceptive, the court finds that the prosecution did not produce false evidence in Heath's prosecution. Although the prosecutor might have done a better job of defining the parameters of the agreement between the state and Walter, the prosecutor did raise the most material issues regarding Walter's motivation for testifying. After the direct examination, the jury understood that Walter was testifying as the result of a deal. Further, the jury understood that Walter pled guilty to one charge and that the state had made no promises with regard to sentencing on that charge. Any further aspects of the deal between the state and Walter that were not raised during direct examination were brought out during the cross-examination. After Kagawa's cross-examination, the jury had a complete understanding of the agreement that the state had reached with Walter. The record indicates that the jury had sufficient evidence to weigh Walter's credibility. Since the jury understood the motivation for Walter's testimony and further recognized the relevant aspects of the agreement, there is no reasonable likelihood that additional information would have affected the jury's judgment regarding the credibility of Walter's testimony.
 
 
 30
 IT IS ORDERED that the petition for a writ of habeas corpus is denied.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant filed a statement waiving oral argument, and on consideration of that statement and the briefs, the appeal is submitted on the briefs and the record
 
 
 [1]
 We apply the Maclin factors ourselves rather than remand for such a determination by the district court, because here, as in Howland, "it would be an exercise in futility and a waste of judicial resources to remand this case solely for ruling on [the] request for counsel." 833 F.2d at 646
 
 
 [1]
 A similar instruction was given with regard to each of the ten charges against the defendant. The prosecution brought ten separate charges because Heath was accused of possessing and delivering several controlled substances on several dates