**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 26 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JUAN CRUZ VEGA,

       Petitioner-Appellant,

v.

JOHN SUTHERS, Director of
Colorado Department of Corrections;
BOB HICKOCK, Warden of Delta
Correctional Center, Delta, Colorado;
KEN SALAZAR, Attorney General for
the State of Colorado,

       Respondents-Appellees.*

No. 98-1024

---

    *The original respondents in this case, Aristedes Zavaras, Director of Colorado Department of Corrections, Hoyt Brill, Warden of Prairie Correctional Facility, Appleton, Minnesota, and Gale Norton, Attorney General for the State of Colorado, were each sued in their official capacities. During the pendency of this appeal, John Suthers replaced Aristedes Zavaras as Director of Colorado Department of Corrections and Ken Salazar replaced Gale Norton as Colorado's Attorney General. Furthermore, Vega has been transferred from the Prairie Correctional Facility, where Hoyt Brill is warden, to the Delta Correctional Center, where Bob Hickock is warden. The court has before it an unopposed motion to substitute the original respondents in this case with their successors in interest and to replace Gale Norton with Ken Salazar as respondents' counsel in this case. That motion is hereby granted. The caption to this opinion accurately reflects the parties and attorneys of record in this appeal.

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-Z-2708)

---

Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, (David F. Vela, Colorado State Public Defender, with him on the brief), for Petitioner-Appellant.

Roger Griffin Billotte, Assistant Attorney General, Criminal Enforcement Section, Denver, Colorado, (Ken Salazar, Attorney General, with him on the brief), for Respondents-Appellees.

---

Before **TACHA, BALDOCK,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Juan Cruz Vega was convicted in Colorado state court on charges of possessing more than twenty-eight grams of cocaine with intent to distribute. *See* Colo. Rev. Stat. §§ 18-18-105(1), (3) (1991). Although the presumptive sentencing range[1] for a conviction on such charges was from four to sixteen

---

[1]At the time of Vega's conviction, Colorado divided felonies into six classes and provided a presumptive minimum and maximum sentence for each of the six classes. *See* Colo. Rev. Stat. § 18-1-105(1)(a)(IV) (1991). Absent a finding by the trial court of one or more non-delineated aggravating or mitigating factors or one or more specifically delineated aggravating factors, the trial court is required to sentence a felon to a determinate sentence within the presumptive range. *See id.* §§ 18-1-105(1)(b)(I), (6), (9) (1991).

years,[2] Vega was sentenced to a term of imprisonment of twenty-four years and one day because he was found to be a "special offender."[3] Vega was adjudged a special offender because he had "introduced, distributed, or imported" the cocaine "into the state of Colorado." Colo. Rev. Stat. § 18-18-107(1)(d) (1991).[4]

---

[2]*See* Colo. Rev. Stat. § 18-18-105(2)(a) (1991) (classifying offense of possessing cocaine with intent to distribute, absent a prior conviction, as a class 3 felony); *id.* § 18-1-105(1)(a)(IV) (1991) (providing a presumptive sentencing range of 4 to 16 years for a class 3 felony).

[3]*See* Colo. Rev. Stat. § 18-18-107 (1991) (providing that upon a felony conviction and the finding of one or more of the specifically-delineated "extraordinary aggravating circumstances," the defendant is classified as a "special offender" and the court is required to "sentence the defendant to a term greater than the presumptive range for a class 2 felony but not more than twice the maximum term for a class 2 felony"); *id.* § 18-1-105(1)(a)(IV) (1991) (providing a presumptive sentence range of 8 to 24 years for a class 2 felony). Read together, these two provisions create a minimum sentence for a special offender of twenty-four years and one day and a maximum sentence of forty-eight years. *See Vega v. People*, 893 P.2d 107, 116 (Colo. 1995) (*en banc*).

[4]Section 18-18-107(1)(d), the provision at the heart of this case, provides as follows:

> (1) Upon a felony conviction . . . under this article, the presence of any one or more of the following extraordinary aggravating circumstances designating the defendant a special offender shall require the court to sentence the defendant to a term greater than the presumptive range for a class 2 felony but not more than twice the maximum term for a class 2 felony authorized in the presumptive ranger for the punishment of such felony:
>> (d) The defendant unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance . . . .

Colo. Rev. Stat. § 18-18-107(1)(d) (1991).

On direct appeal, Vega argued as follows: (1) he was denied due process of law and the right to a trial by jury because the trial court refused to allow him to raise an entrapment defense to the special-offender charge; and (2) he was denied his Sixth Amendment right to confront the witnesses against him because the trial court had excluded evidence of internal Drug Enforcement Agency incentives for the conviction of drug offenders. The Colorado Court of Appeals and Colorado Supreme Court, in turn, rejected Vega's contentions and affirmed his conviction and sentence. *See People v. Vega*, 870 P.2d 549, 554 (Colo. Ct. App. 1993); *Vega v. People*, 893 P.2d 107, 120 (Colo. 1995) (*en banc*).

After his conviction and sentence were affirmed on direct appeal, Vega filed the instant § 2254 habeas corpus petition. In the petition, Vega raised the same two claims he raised on direct appeal. The district court concluded that Vega was not entitled to habeas relief for substantially those reasons stated by the Colorado Supreme Court on direct appeal and, therefore, dismissed Vega's

petition with prejudice.  Exercising jurisdiction pursuant to 28 U.S.C. § 2253,[5]

this court **affirms**.


## II.  BACKGROUND

A.  Factual Background

The prosecution of Vega grew out of a sting operation that began with the

arrest of John Anderson in Colorado on arson and burglary charges.  Anderson,

who also had drug charges pending against him in Nevada, approached law

enforcement officials in Colorado in hopes of providing information in exchange

for a reduction of the charges against him and for leniency in sentencing.

Anderson convinced agents of the Drug Enforcement Administration

("DEA") and the Arvada, Colorado Police Department ("APD") to allow him to

negotiate with individuals who might import narcotics into Colorado.  Anderson

---

[5]Vega filed his § 2254 habeas petition on October 25, 1995, well before the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Accordingly, the AEDPA's revised standards of review and certificate-of-appealability requirements do not apply.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *United States v. Kunzman*, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1375 (1998).  Nevertheless, the pre-AEDPA version of 28 U.S.C. § 2253 required that a § 2254 habeas petitioner obtain a certificate of probable cause before taking an appeal from a final order denying habeas relief.  *See* 28 U.S.C. § 2253 (1994).  Because the district court granted Vega a certificate of probable cause on February 27, 1998, this court has jurisdiction to hear Vega's appeal.  *See id.*

began his work with the DEA and APD by calling Charlie Aponte, an individual Anderson had known for some period of time. Anderson called Aponte in California and indicated that he "was in Colorado and had a buyer" and that he "would like to do some business." Aponte indicated that he would "look into it." Although Anderson made several additional calls from November of 1990 through January of 1991, the telephone negotiations did not come to fruition. Nevertheless, Anderson was released from custody in Colorado so that he could travel to California in the hope of consummating a sale and delivery of drugs to Colorado. Anderson remained in California for a number of weeks to continue negotiations with Aponte. Aponte eventually agreed to provide Anderson with drugs during one of their meetings.

At some point, Vega, a friend of Aponte, became involved in the conspiracy to deliver drugs to Colorado. On the evening of January 14, 1991, after the deal had been finalized, Anderson, Aponte, Vega, and an additional co-conspirator flew to Denver with three kilograms of cocaine. Upon arrival in Denver, undercover DEA agents met the group at the airport and transported them to a hotel where the deal was to be consummated. The DEA agents videotaped the transaction at the hotel and then arrested Vega and the others.

Vega was charged with possession of cocaine with intent to distribute in violation of Colo. Rev. Stat. § 18-18-105 (1991) and as a special offender

pursuant to Colo. Rev. Stat. § 18-18-107 (1991) because he had imported the cocaine into Colorado. At trial, Vega asserted entrapment as an affirmative defense[6] to both the possession-with-intent-to-distribute and special-offender charges. The trial court, however, refused to instruct the jury that the entrapment defense applied to the special-offender charge. It reasoned that the special-offender statute did not define a substantive offense, but rather was a sentence enhancement provision to which affirmative defenses did not apply. The trial court also excluded, as irrelevant, proffered cross-examination questions concerning internal DEA incentives to promote the arrest and conviction of drug traffickers.

The jury found Vega guilty of distribution of cocaine and returned a special verdict finding beyond a reasonable doubt that Vega had imported the cocaine into Colorado. Based on the special verdict, the trial court found that Vega was a special offender subject to enhanced sentencing under Colo. Rev. Stat. § 18-18-107 (1991) and imposed a sentence of twenty-four years and one day.

---

[6]*See* Colo. Rev. Stat. § 18-1-709 ("The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official . . . ."); *see also id.* § 18-1-710 (providing that the exemption from criminal liability set out in § 18-1-709 is an affirmative defense).

B. Procedural History

   1. *Colorado State Court Proceedings*

   Vega appealed his conviction to the Colorado Court of Appeals ("CCA"),
which affirmed. *See People v. Vega*, 870 P.2d 549 (Colo. Ct. App. 1993). The
Colorado Supreme Court ("CSC") granted certiorari to review the decision of the
CCA. *See Vega v. People*, 893 P.2d 107, 109 & n.1 (Colo. 1995). Before the
CSC, Vega argued that the trial court had erred in excluding his proffered line of
cross-examination because evidence of internal DEA incentives was relevant to
Vega's entrapment defense. Vega also argued, for the first time, that evidence of
the incentives was relevant for the purpose of establishing bias in the DEA
agents' testimony. The CSC rejected Vega's claim that the proposed cross-
examination was relevant to the issue of entrapment, concluding, as had the CCA,
that the Colorado entrapment statute creates a subjective test. *Id.* at 119 (noting
that under Colorado's subjective entrapment defense, "while police methods are
relevant to the defense of entrapment, police motives are not relevant because
they do not impact on the subjective state of mind of the defendant").

   As to Vega's claim that the proposed cross-examination was relevant to
demonstrate bias in the DEA agents' testimony, the CSC exercised its prerogative
to ignore Vega's procedural default and reviewed the issue on the merits. *Id.*
That review led the CSC to conclude the trial court had erred in precluding the

proposed cross-examination because the "testimony would have revealed the specific benefits that would accrue to the agents should Vega be convicted of the charges against him and would have demonstrated the DEA agents' 'motive[s] for favoring the prosecution' and strong interest in the outcome." *Id.* at 120 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Nevertheless, applying those factors identified by the Supreme Court in *Van Arsdall*, the CSC concluded, after a thorough and detailed analysis, that the trial court's error in limiting Vega's cross-examination was harmless beyond a reasonable doubt. *Id.*

The CSC also rejected Vega's claim that denying him an opportunity to present an entrapment defense to the special offender charge violated the Due Process Clause. *Id.* at 113-17. The CSC began its analysis of this issue by considering "the language of the statute, its legislative history, and the criteria [the CSC had] applied in the past to distinguish substantive offenses from sentencing provisions" and concluding, purely as a matter of state law, that § 18-18-107 is a "sentencing provision to which affirmative defenses do not apply." *Vega*, 893 P.2d at 113. That conclusion, according to the CSC, necessitated a further analysis of whether § 18-18-107 "violates due process limitations placed on the power of states to define criminal offenses." *Id.*

In analyzing that question, the CSC looked to the Supreme Court's decision in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986). *Vega*, 893 P.2d at 114.

-9-

According to the CSC, *McMillan* stands for the proposition that the Due Process Clause acts to limit the ability of the states to define certain operative facts as sentencing enhancements rather than elements of a crime. *Id.* at 114-15. Analyzing the non-exclusive factors identified by the Court in *McMillan*, the CSC concluded that treating § 18-18-107 as a sentencing enhancement comported with the Due Process Clause because: (1) although § 18-18-107 requires "a sentencing judge to impose a greater sentence than otherwise is available" for the underlying offense, the special offender sentence is not "disproportionate" to the sentence available for the underlying crime and does not "drive the penalty determination entirely"; (2) Vega had pretrial notice of the possibility of the special-offender enhancement and the benefit of a jury finding beyond a reasonable doubt that he had imported the cocaine into Colorado; and (3) there was no indication in either the text of § 18-18-107 or its legislative history that the special-offender provision was designed to surreptitiously evade constitutionally-mandated burdens of proof by "restructuring Colorado's distribution offense to make an essential element of [the] crime a sentencing factor." *Id.* at 116.

    *2. Section 2254 Habeas Corpus Proceedings*

    After Vega had exhausted his direct appeals in state court, he filed the instant § 2254 habeas corpus petition. In his petition, Vega once again raised the claims relating to the special offender statute and the limitation on his cross-

examination of the DEA agents. The matter was referred to a magistrate for initial proceedings pursuant to 28 U.S.C. 636(b)(1). The magistrate recommended that the writ be granted in an extensive Report and Recommendation ("R&R"). According to the magistrate, "[t]he net result is that [Vega] received more than a mere sentence enhancement. He was convicted of an upgraded felony on a factual issue where the burden of proof was lessened. The Colorado General Assembly has transformed a sentencing factor into an element of an offense [in violation of the Supreme Court's decision in *McMillan*]." As to Vega's claim relating to limitation on his cross-examination of the DEA agents, the magistrate concluded, after a thorough review of the trial record and opinion of the CSC, that the limitation was harmless because "[t]here is no indication that the excluded information would have made any substantial difference in the outcome of the case." *Cf. Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (adopting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946), "substantial and injurious effect" standard for reviewing trial-type constitutional errors in the habeas corpus context).

The respondents filed a timely objection to the magistrate judge's R&R, asserting the magistrate had erred in concluding that treating § 18-18-107 as a sentencing provision violated Vega's right to due process. Upon *de novo* review, the district court rejected the magistrate's recommendation as to the sentence

enhancement for substantially those reasons stated by the CSC in its opinion on direct appeal. Furthermore, despite Vega's failure to object, the district court reviewed *de novo* that portion of the R&R analyzing Vega's cross-examination claim and agreed the erroneous limits imposed by the trial court were harmless.

## III.  ANALYSIS

A.  Limitation on Cross-Examination of DEA Agents

Vega asserts the district court erred in concluding that the limitations imposed by the state trial court on Vega's cross-examination of the DEA agents did not have a substantial and injurious effect on the outcome of the trial.  We conclude that Vega waived appellate review of this question when he failed to file an objection to the magistrate's R&R.

This court has adopted a "firm waiver rule" which provides that a litigant's failure to file timely objections to a magistrate's R&R waives appellate review of both factual and legal determinations.  *See United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996).  While acknowledging the force of this rule, Vega argues that it does not apply under the particular facts of this case.  According to Vega, the district court  "revived" the right to appeal when it considered and rejected the cross-examination claim on the merits.  Vega's protestations to the contrary, it is well-settled in this circuit that a district court's

-12-

decision to review a R&R *de novo*, despite the lack of an appropriate objection, does not, standing alone, preclude application of the waiver rule. *See id.* at 1061; *see also Thomas v. Arn*, 728 F.2d 813, 814-15 (6th Cir. 1984) (deeming appellate argument waived for failure to object to magistrate's R&R even though district court, *sua sponte*, reviewed record *de novo*), *aff'd* 474 U.S. 140 (1985). *But see United States v. Male Juvenile*, 121 F.3d 34, 39 (2d Cir. 1997) ("Because the purposes of the waiver rule are not advanced when the district court has reviewed the magistrate judge's [R&R] de novo, we will disregard the procedural default rule and reach the merits of this case."). Accordingly, *One Parcel* forecloses Vega's assertion that his cross-examination claim was "revived" when the district court addressed the claim *de novo* despite Vega's failure to file objections to the R&R. *See United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997) (holding that "a three-judge panel cannot disregard or overrule circuit precedent").

In the alternative, Vega asserts this court should reach the merits of his cross-examination claim because the "ends of justice" so dictate. *See Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (holding that the "firm waiver rule" does not apply when the "ends of justice dictate otherwise"). Although this court has never defined the parameters of the "ends of justice" exception in the context of a litigant who is represented by counsel, we have excused the failure to file timely objections only in the rare circumstance in which a represented party did

-13-

not receive a copy of the magistrate's R&R.  *See Tesoro v. Colorado*, No. 97-1048, 1997 WL 787173, at *1 (10ᵗʰ Cir. Dec. 23, 1997), *cert. denied*, 118 S. Ct. 1812 (1998).  Vega, who has been represented by counsel throughout these federal § 2254 habeas proceedings, has made no such claim.  In fact, there is simply no indication in Vega's appellate filings as to why he failed to file an objection to the magistrate's R&R.  Accordingly, this court concludes that Vega has waived his right to appellate review of his cross-examination claim.[7]

B.  Denial of Entrapment Defense to Special Offender Charge

*1.  Standard of Review*

This court "review[s] the district court's legal conclusions *de novo*[] and its factual findings for clear error.  *See Hawkins v. Hannigan*, 185 F.3d 1146, 1151 (10ᵗʰ Cir. 1999).  "'[W]e afford deference to the state court's construction of state law' and presume that its factual findings are correct."  *Id.* (quoting *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10ᵗʰ Cir.) (stating pre-AEDPA standards of review),

---

[7]This court has, in a case involving a *pro se* litigant, reviewed the merits of the omitted issues, as one factor among many, in deciding whether to apply the "ends of justice" exception.  *See Theede v. United States*, 172 F.3d 1262, 1268 (10ᵗʰ Cir. 1999) ("Third, after our review of the record and law, we are convinced that the merits of Theede's claims are suspect at best.").  Assuming, without deciding, that such an analysis is appropriate in a case where the litigant is counseled, this court concludes, after review of the opinions of the CSC, the magistrate judge, and the district court; the entire record; and the applicable case law, that our decision not to reach the merits of this claim is entirely consistent with the "ends of justice."

*cert. denied*, 119 S. Ct. 378 (1998)); *see also supra* note 5 (noting that Vega's

petition was filed prior to the enactment of the AEDPA and is thus not governed

by the AEDPA's revised standards of review).

### 2. *Analysis*

The parties to this appeal offer the court two diametrically opposed modes

of analysis for resolving Vega's claims. Vega states the issue on appeal in the

following broad and abstract terms: Can Colorado, consistent with the Due

Process Clause, treat § 18-18-107 as a sentencing provision rather than as a

separate substantive crime or an element of the underlying possession-with-intent-

to-distribute offense? So stated, Vega asserts that the question can only be

resolved by reference to the Supreme Court's *McMillan* line of cases.[8] As noted

above, the CSC, magistrate judge, and district court all accepted Vega's assertion

that the *McMillan* line controlled the disposition of his claims, although not all

agreed that those cases entitled him to relief. *See supra* Section II(B) (setting

forth opinions of each).

---

[8]For purposes of this opinion, all of the following cases fall within the *McMillan* line: *In re Winship*, 397 U.S. 358 (1970); *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *Patterson v. New York*, 432 U.S. 197 (1977); *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Almendarez-Torres v. United States*, 118 S. Ct. 1219 (1998); *Jones v. United States*, 119 S. Ct. 1215 (1999). We note that the Supreme Court's opinion in *Jones* was decided after the parties had originally filed their appellate briefs in this court. Accordingly, this court ordered the parties to file supplemental briefs addressing the applicability of *Jones* to this appeal. We have considered those supplemental briefs in deciding this appeal.

Although the respondents appear to have acquiesced in the applicability of the *McMillan* line before the CSC and the district court, they argue on appeal that when viewed with an appropriate level of specificity, Vega's claims regarding the special-offender provision do not implicate the *McMillan* line at all. In particular, the respondents note that the cases in the *McMillan* line all involve, to one degree or another, the question of whether a sovereign can evade the high level of proof constitutionally required to establish criminal offenses by restructuring some essential elements of the crime into sentencing factors.[9] In this case, however, it

---

[9]*See Winship*, 397 U.S. at 361-64, 368 (noting hallowed nature of proof-beyond-a-reasonable-doubt standard and holding that the standard must be applied during the adjudicatory phase of a juvenile delinquency proceeding); *Mullaney*, 421 U.S. at 703-04 (ruling unconstitutional a provision of Maine law requiring a defendant to establish by a preponderance of evidence that he acted in the heat of passion on sudden provocation to reduce murder to manslaughter and holding that "the Due Process Clause requires the prosecution to prove [the absence of heat of passion] beyond a reasonable doubt . . . when the issue is properly presented in a homicide case"); *Patterson*, 432 U.S. at 206, 210 (upholding against due process attack a New York state statute which imposed upon the defendant the burden of proving, by a preponderance of the evidence, the affirmative defense that he acted under the influence of extreme emotional disturbance); *McMillan*, 477 U.S. at 91-92 (holding that Pennsylvania could, consistent with the Due Process Clause, treat "visible possession of a weapon" as a sentencing consideration rather than an element of the underlying offense and rejecting the argument that, even if treated as a sentencing consideration, Pennsylvania must apply a heightened burden of proof); *Almendarez-Torres*, 118 S. Ct. at 1228-33 (holding that Congress could, consistent with the Due Process Clause, treat recidivism as a sentencing enhancement rather than an element of an underlying offense and, in so doing, present the issue to a judge at sentencing, rather than a jury, for proof by a preponderance of the evidence); *Jones*, 119 S. Ct. at 1222-28 (concluding that 18 U.S.C. § 2119, the federal carjacking statute, creates three separate offenses rather than one offense with two sentencing provisions to avoid grave doubt about

-16-

is undisputed that Vega received all of the procedural protections at issue in the *McMillan* line: (1) he was provided notice of the possibility of the special-offender enhancement through a separate pre-trial charge; (2) the question of whether he had imported the cocaine into Colorado was submitted to the jury in a special verdict form; and (3) the jury was instructed that it must find the element of importation "beyond a reasonable doubt." *See Vega*, 893 P.2d at 116 (setting forth procedural protections afforded Vega).[10] The only thing that Vega was denied by the classification of § 18-18-107 as a "sentencing enhancement" instead of a "crime" or "element" was the right to present an entrapment defense to the

the statute's constitutionality under the *McMillan* line of cases).

[10]Several cases in the *McMillan* line make clear that these three core protections are at the heart of the ability of the government to define an operative fact as a sentencing factor rather than an element of the underlying crime or separate substantive offense. *See Jones*, 119 S. Ct. at 1228 (holding that federal carjacking statute creates three separate offenses, rather than one offense and two sentencing provisions, "each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to the jury for its verdict"); *Id.* at 1228-29 (Stevens, J., concurring) ("I am convinced that it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt. That is the essence of the Court's holdings in [*Winship*, *Mullaney*, and *Patterson*]."); *Almendarez-Torres*, 118 S. Ct. at 1228 ("Invoking several of the Court's precedents, petitioner claims that the Constitution requires Congress to treat recidivism as an element of the offense–irrespective of Congress' contrary intent. Moreover, petitioner says, that requirement carries with it three subsidiary requirements that the Constitution mandates in respect to ordinary, legislatively intended elements of crimes. The indictment must state the 'element.' The Government must prove that 'element' to the jury. And the Government must prove the 'element' beyond a reasonable doubt." (citations omitted)).

-17-

importation charge. Thus, according to the respondents, this court should eschew the abstract and purely semantic question of whether Colorado can label § 18-18-107 as a sentencing enhancement and instead focus on the real question presented by Vega's § 2254 habeas petition: Can Colorado, consistent with the Due Process Clause, deny the availability of the affirmative defense of entrapment to a charge of importation of cocaine?[11]

This court agrees with respondents that Vega's proposed analytical model constitutes a semantic wordplay which exalts form over substance. Ultimately, it matters not-at-all what terminology Colorado chose to apply to § 18-18-107, be it "sentence enhancement," "crime," or "element," if that semantic choice has no

---

[11]According to respondents, Vega is procedurally barred from raising this narrow question–*i.e.*, whether the Due Process Clause mandates that states make an entrapment defense available–because he failed to litigate the issue in state court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . . ."). The opinion of the CSC, however, clearly establishes that this precise issue was raised in state court. In the first footnote of its opinion, the CSC recited the issues upon which it had granted *certiorari* review; included among those issues was the following:

> Whether the [CCA's] holding, that an accused is not entitled to present the affirmative defense of entrapment, or any affirmative defense to a charge or importation of a controlled substance under the special offender statute, § 18-18-107, 8B C.R.S. (1986), violates federal and state constitutional guarantees to due process of law.

*Vega*, 893 P.2d at 109 n.1. That Vega succeeded in having the CSC review this claim under the inapposite *McMillan* rubric does not diminish his presentation of that claim in state court.

-18-

impact on the procedural protections due a criminal defendant. In this case, Colorado's decision to label § 18-18-107 as a sentencing enhancement did not free the state prosecutor from the burden of providing proper notice of the applicability of the enhancement through a separate pre-trial charge, remove the determination of the existence of the operative fact of importation from the jury, or reduce the prosecutor's burden of proving the fact of importation beyond a reasonable doubt. *See Vega*, 893 P.2d at 116. The only real, identifiable impact of Colorado's choice to label § 18-18-107 as a sentencing enhancement is that Vega was denied the opportunity to present an entrapment defense to the importation charge. It is that narrow impact which is properly before the court, not the utterly abstract, at least in terms of this case, distinction between sentencing enhancements and substantive crimes.[12]

As to this very narrow question, we conclude that Colorado can, consistent with due process, choose not to make the affirmative defense of entrapment

---

[12]This court recognizes that in some cases the question of whether a provision of law creates a sentencing enhancement or substantive offense will implicate the Due Process Clause. *See, e.g.*, *Jones*, 119 S. Ct. at 1218 (noting that because trial court erroneously viewed question of whether victim of carjacking has suffered "serious bodily injury" as a sentencing enhancement rather than an element of an aggravated carjacking offense, the defendant was not provided pre-indictment notice of the question of serious bodily harm, was denied the opportunity to argue the issue to the jury, and was denied the right to have the prosecution prove that the victim suffered serious bodily injury beyond a reasonable doubt). The facts of this case do not, however, present such a case.

available to a charge of importation of cocaine in violation of § 18-18-107.[13]  The

Supreme Court has long recognized that the defense of entrapment "is not of a

constitutional dimension."  *United States v. Russell*, 411 U.S. 423, 433 (1973).[14]

The limited nature of the entrapment defense was reaffirmed by the Supreme

Court in *Hampton v. United States*, 425 U.S. 484 (1976).  In *Hampton*, a majority

of the Court again recognized that "entrapment" was a term of art referring to a

limited doctrine devoid of constitutional dimension.  *See id.* at 489 (plurality

opinion) (noting that because Hampton's claim involved an allegation that the

government's conduct was so outrageous that due process principles barred the

government from obtaining a conviction, the case did "not qualify as one

involving 'entrapment' at all"); *id.* at 491-93 & n.2 (Powell, J., concurring)

(recognizing that after *Russell*, entrapment was a non-constitutional, limited term

_____

[13]Vega has not asserted at any point in these proceedings, including on
direct appeal, that Colorado's choice to make available the affirmative defense of
entrapment to some offenses while precluding its application to § 18-18-107
violates the Equal Protection Clause.  This court offers no opinion on that
question.

[14]*See also United States v. Spivey*, 508 F.2d 146, 151 (10th Cir. 1974)
(noting that defense of entrapment is "nonconstitutional" in nature); *United States
v. Garcia*, 562 F.2d 411, 415 (7th Cir. 1977) (quoting *Russell*'s "not of a
constitutional dimension" language); *Ainsworth v. Reed*, 542 F.2d 243, 244 (5th
Cir. 1976) ("[T]he Supreme Court [in *Russell*] expressly rejected a plea to raise to
a constitutional status the doctrine of entrapment as a defense."); *Bailey v.
People*, 630 P.2d 1062, 1066 (Colo. 1981) (*en banc*) ("Since the defense of
entrapment is not of constitutional stature, states are free to define it as they
choose.").

of art). A different majority, however, recognized that in some very limited set of circumstances the Due Process Clause might stand as an independent bulwark against outrageous governmental conduct. *See id*. at 493-95 (Powell, J., concurring); *id.* at 500-01 (Brennan, J., dissenting); *see also United States v. Lacey*, 86 F.3d 956, 963-64 (10th Cir. 1996) (discussing distinction between defenses of "entrapment" and "outrageous governmental conduct" and noting narrow scope of the latter).[15] Following the Supreme Court's decisions in *Russell* and *Hampton*, a number of courts have concluded that claims relating to the denial of an entrapment defense, even when the defense is applicable as a matter of state law, are not cognizable in habeas because such claims are not of

---

[15]It is important to once again emphasize the narrow focus of Vega's § 2254 habeas claims. Vega has always focused on the narrow question of whether Colorado could deny him the entrapment defense set out in Colo. Rev. Stat. § 18-1-709 (1991) through the artifice of labeling § 18-18-107 a sentencing provision rather than a separate, substantive crime. If Colorado's entrapment defense was available, Vega's predisposition to commit the crime would become an element of the offense which the prosecution would have to prove beyond a reasonable doubt. *See Vega*, 893 P.2d at 111, 119 (noting that Colorado has adopted a subjective test for entrapment focusing on the defendant's disposition and that when the defense is raised the prosecution must disprove its applicability beyond a reasonable doubt). Vega has never raised, and this court does not address, the analytically distinct argument that the government's conduct with regard to his case was so outrageous as to bar his conviction. *See United States v. Mosley*, 965 F.2d 906, 908 (10th Cir. 1992) ("When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct.").

constitutional magnitude.[16]  Although this court need not reach that distinct and possibly more troubling question,[17] these cases, taken together with *Russell* and *Hampton*, certainly support the conclusion that the states are not obligated to provide an entrapment defense to criminal defendants.

Based on *Russell*, *Hampton*, and those additional authorities cited above, we conclude that Colorado can, consistent with the Due Process Clause, preclude the applicability of an entrapment defense to Colorado's special offender statute.

---

[16]*See Johns v. McFadden*, No. 93-15844, 1994 WL 192391, at *3 (9th Cir. May 13, 1994) ("[P]etitioner's entrapment argument may be grounds for granting his habeas petition only if the government's conduct was so outrageous that permitting it to even attempt to convict petitioner would deprive him of his right to due process."); *Heath v. Neal*, No. 89-1026, 1990 WL 107872, at *3 (7th Cir. July 30, 1990) ("Even if the trial judge should have given a straight instruction on entrapment rather than the compromise instruction that he actually gave, that would constitute an error in state procedure only."); *Ainsworth v. Reed*, 542 F.2d 243, 244-45 (5th Cir. 1976) (holding that because entrapment is not a constitutional doctrine, "a writ of habeas corpus could not issue" on petitioner's claim that the jury's verdict of no entrapment was against the great weight of evidence).

[17]Does a habeas petitioner state a cognizable due process claim when state law makes the question of entrapment an element of the underlying offense, which must be disproved by the prosecution beyond a reasonable doubt, and the petitioner alleges that the state court erroneously refused to instruct on a factually supported entrapment defense?  That fact pattern presents a markedly different question than the one presented in this case because Colorado has simply chosen not to make any entrapment defense available to special offender charges.  *See Patterson v. New York*, 432 U.S. at 210 ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."); *McMillan*, 477 U.S. at 85 ("[I]n determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive.").

*Cf. Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993) (upholding against due process challenge Arizona entrapment statute which requires a defendant to admit all elements of each offense charged before the state court would instruct the jury on an entrapment defense). Furthermore, because the sole effect of Colorado's decision to classify § 18-18-107 as a sentencing provision is the elimination of availability of an entrapment defense, the court concludes that Vega's claims are controlled by the Supreme Court's decisions in *Russell* and *Hampton*, rather that the decisions in the *McMillan* line. So analyzed, Vega's claims relating to § 18-18-107 fail to raise a viable due process claim.

## IV. CONCLUSION

For those reasons set out above, the order of the United States District Court for the District of Colorado denying Vega's § 2254 habeas petition is hereby **AFFIRMED**.