F I L E D
United States Court of Appeals
Tenth Circuit

JUN 28 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MICHAEL RAY HICKS,

      Plaintiff-Appellant,

v.

CHRIS A. WOODRUFF; JOHN DOE;
GONZALES, Chief of Oklahoma City
Police Department; OKLAHOMA
CITY POLICE DEPARTMENT;
THE CITY OF OKLAHOMA CITY;
MAXINE GRIDER; GRIDER'S
FOODS,

      Defendants-Appellees.

No. 99-6303
(D.C. No. 96-CV-1137-L)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **PORFILIO** , and **EBEL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-appellant Michael Hicks appeals the district court's order adopting the magistrate judge's report and recommendation granting summary judgment to defendant-appellee Chris Woodruff on plaintiff's 42 U.S.C. § 1983 civil rights complaint claiming Woodruff violated his constitutional rights by using excessive force during his arrest of plaintiff. Although plaintiff's complaint also asserted claims against Chief of Oklahoma Police Department Gonzales, Oklahoma City Police Department, the City of Oklahoma, Maxine Grider, Grider Foods, and John Doe, the only claims properly before this court on appeal are those plaintiff asserted against Woodruff. [1]

---

[1] In an earlier report and recommendation, dated July 17, 1998, the magistrate judge recommended dismissal of the claims against the Oklahoma City Police Department. In addition, the magistrate judge recommended granting the respective summary judgment motions of defendants Gonzales, City of Oklahoma City, Maxine Grider, and Grider Foods. Defendant John Doe was dismissed as not properly identified or served. Plaintiff did not file timely objections to this report and recommendation as required by 28 U.S.C. § 636. Therefore, his right to appellate review of this decision is waived. *See Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999) ("This court has adopted a 'firm waiver rule' which provides that a litigant's failure to file timely objections to a magistrate's R&R waives appellate review of both factual and legal determinations."). Insofar as plaintiff intends to bring this appeal of his claims against Maxine Grider and Grider Foods, their motion to dismiss directed to this court is granted.

**Facts**

On July 11, 1994, plaintiff entered Grider Foods store for the purpose of passing a forged check. Alerted by a suspicious clerk, defendant Chris Woodruff, an off-duty Oklahoma City police officer working security at the store, requested plaintiff's identification and asked plaintiff to accompany him to the back of the store to answer some questions. After the two passed through double doors at the back of the store, plaintiff attempted to retrieve his driver's license and the check from Woodruff. According to plaintiff's version of the facts, Woodruff attacked him, and in the ensuing scuffle, plaintiff took Woodruff's gun. He claimed that he surrendered the gun, was ten to fifteen feet away from Woodruff, and was unarmed and fleeing when Woodruff shot him in the thigh. Plaintiff fled from the store and was arrested by another police officer within several blocks.

A store videotape of the incident reveals a somewhat different scenario. It shows that as the two men were walking down the hallway, plaintiff turned around and hit Woodruff twice in the head and took his gun. The videotape shows that plaintiff pointed the gun directly at Woodruff. There were some areas which were not covered by the store's camera, and consequently, the videotape does not reveal at what point the shot, wounding plaintiff, was fired. Contrary to plaintiff's account, Woodruff claimed that once he noticed the safety on the gun was still on, he attempted to retrieve the gun from plaintiff. He asserted that the

shot which wounded plaintiff occurred during the struggle for the gun. For purposes of recommending a grant of summary judgment to Woodruff, the magistrate judge construed the facts in favor of plaintiff, accepting plaintiff's version of the facts insofar as his version was not refuted by the videotape.[2]

On appeal, plaintiff asserts that the district court erred in granting Woodruff's motion for summary judgment based on qualified immunity. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**Discussion**

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S. Ct. 53 (1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the

---

[2] In his complaint, plaintiff alleged that the store videotape had been altered to support Woodruff's claim that the shooting was justified. In his response to defendant Maxine Grider's motion to dismiss in this court, plaintiff continues to allege that an Oklahoma City police officer "returned to Grider's Foods the day after the incident, and edited the videotape." Resp. to Mot. to Dismiss at 3. The magistrate judge concluded that there was no evidence to support plaintiff's conclusory claim that the videotape had been tampered with or altered. We agree.

evidence in the light most favorable to the nonmoving party. *See Simms*, 165 F.3d at 1326.

Summary judgment decisions involving a qualified immunity defense, however, are subject to a somewhat different analysis on review. *See Lighton v. University of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000). "Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation omitted). When the defendant bases a motion for summary judgment on the defense of qualified immunity, the plaintiff must show the defendant's actions violated a specific statutory or constitutional right, and "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id*.

Plaintiff alleges that Woodruff's actions in shooting to prevent him from fleeing the store constituted excessive force, were unreasonable, and were in violation of established law. "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Albright*, 51 F.3d at 1535 (*quoting Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). In *Tennessee v. Garner*, 471 U.S. 1, 3 (1985), the Supreme Court held that deadly force may be

used if necessary to prevent the escape of a suspected felon if the police officer has reasonable cause to believe the suspect poses a significant threat of death or serious bodily injury to the officer or others. Therefore, at the time Woodruff shot plaintiff, the law concerning the use of deadly force was clearly established. *See Dixon v. Richer*, 922 F.2d 1456, 1462 (10th Cir. 1991) (holding that the reasonableness standard is "clearly established" for the purpose of § 1983 claims).

"The reasonableness inquiry is an objective one and heavily fact dependent." *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995). A police officer's belief that a fleeing suspect poses a threat of serious physical harm is justified "(1) where the suspect has placed the officer in a dangerous, life threatening situation; or (2) where the suspect is fleeing from the commission of an inherently violent crime." *Ryder v. City of Topeka*, 814 F.2d 1412, 1419 (10th Cir. 1987) (footnote omitted). "This latter situation does not require that the officer's life actually be threatened by the suspect. Rather, the officer is allowed to infer that the suspect is inherently dangerous by the violent nature of the crime." *Id.*

Plaintiff contends that, at the time of the shooting, he had "surrendered" Woodruff's gun, and thus was not a threat to Woodruff or to anyone else. Appellant's Br. at 3. Insofar as this is plaintiff's attempt to mask his actions as evincing an intent to surrender, his characterization is not supported by the

facts. The store videotape clearly indicates that plaintiff attacked Woodruff, took his gun, threatened him with the gun, and attempted to flee to avoid arrest. At no time during the incident does the tape indicate a willingness on plaintiff's part to surrender. The magistrate judge concluded that, although the behavior that initiated the incident--the attempt to pass a forged check--was a nonviolent act that did not pose a threat to anyone, plaintiff, by his own actions, altered the nature of the incident when he attacked Woodruff and took his gun.

In *Garner*, the Supreme Court stated that "if the suspect threatens the officer with a weapon . . ., deadly force may be used if necessary to prevent escape, and if where feasible, some warning has been given." 471 U.S. at 11. Rejecting the Eleventh Circuit's suggestion that an officer may only use deadly force if a suspect possesses a deadly weapon, *see Pruitt v. City of Montgomery*, 771 F.2d 1475, 1483 n.14 (11th Cir. 1985), this court construed the statement in *Garner* to be "merely . . . an example, and not a limitation, on the type of circumstances that would justify an officer's belief that the suspect was threatening immediate harm." *Ryder*, 814 F.2d at 1419 n.16. We concluded, therefore, "that whether a particular seizure is reasonable is dependent on the 'totality of the circumstance,' and not simply on whether the suspect was actually armed." *Id.* (*quoting Garner*, 471 U.S. at 9).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor* , 490 U.S. 386, 396 (1989). A determination of reasonableness must include consideration of "the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 397.

Here, the entire incident transpired in approximately one minute and forty-five seconds. From the moment of plaintiff's physical attack on Woodruff and plaintiff's threat with the gun, considering the "totality of the circumstances," Woodruff could have reasonably feared for his safety or those in plaintiff's path as he fled. As the magistrate judge found, plaintiff's conduct as captured on the store videotape would justify Woodruff's inference that plaintiff was inherently dangerous. *See Garner* , 471 U.S. at 11 (holding use of deadly force reasonable where police officer has probable cause to believe that suspect has committed a crime involving the infliction or threatened infliction of serious physical harm); *Ryder* , 814 F.2d at 1419 (holding police officer "is allowed to infer that the suspect is inherently dangerous by the violent nature of the crime"). We conclude that plaintiff failed to show that Woodruff violated a clearly established

constitutional right and therefore, the district court's grant of qualified immunity was proper.

Plaintiff also argues on appeal that because Woodruff was off-duty, he was not acting as a police officer, but as a private citizen and was, therefore, not entitled to qualified immunity. In order to determine if a police officer was acting under color of state law, the court considers whether, at the time in question, he "'purpose[d] to act in an official capacity or to exercise official responsibilities pursuant to state law,'" or "'whether [the officer's] actions related in some way to the performance of a police duty.'" *David v. City & County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (*quoting Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) and *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990)).

It appears from our reading of the record in this case that the court assumed that Woodruff was acting in his capacity as a police officer under color of state law. Neither the court nor the parties raised the issue until plaintiff mentioned it in his objections to the magistrate judge's report and recommendation. Therefore, because we do not consider an issue raised for the first time in the objections to

the magistrate judge's report and recommendation, we deem the issue waived.

*See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). [3]

An appeal from a district court decision in a 42 U.S.C. § 1983 civil rights case does not require a certificate of appealability. Therefore, plaintiff's request for a certificate of appealability is denied as moot. Plaintiff is reminded that he must continue to make regular partial payments on his assessed fee until the entire amount has been paid. The motion to dismiss submitted by defendants Maxine Grider and Grider's Foods is granted. The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge

---

[3] Even if we considered the issue, the argument is self-defeating. Plaintiff's § 1983 complaint is based on his contention that Woodruff violated his constitutional rights while acting under the color of state law. *See Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996) ("To state a claim under § 1983, a plaintiff must allege that the claimed deprivation was committed by a person acting under color of state law."). Were he to prevail on his argument that Woodruff was not acting in his capacity as a police officer, although Woodruff would be precluded from consideration for qualified immunity, he would also be outside the color of state law and eliminated as a proper defendant in a § 1983 civil rights action.